**People of the State of Illinois, Plaintiff-Appellee, v. Aaron Oberlander, Defendant-Appellant.**

**Gen. No. 53,266.**

First District, First Division.

April 21, 1969.

470

Julius Lucius Echeles, JoAnne F. Wolfson, and Frederick F. Cohn, of Chicago, for appellant.

John J. Stamos, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Michael D. Stevenson, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE BURMAN delivered the opinion of the court.

The defendant, Aaron Oberlander was indicted on the charge of committing the offense of gambling on September 8, 1967, "in that he knowingly possessed books, instruments and apparatus by means of which bets and wagers were made, recorded and registered" in violation of section 28–1(a–5) of the Criminal Code (Ill Rev Stats 1967, c 38, § 28–1(a–5)). The defendant waived a jury trial, was found guilty of the offense charged and was placed on probation for a period of two years.

On appeal, the defendant contends (1) that the court erred in permitting a State's witness to give an opinion without demonstrating proper qualifications therefor; (2) that he was denied his constitutional right to cross-examine the State's so-called expert witness; and (3) that the evidence was insufficient to sustain a conviction.

On September 8, 1967, Officer Alex Zablocki, a vice detective for the Chicago Police Department, in the company of three other police officers, entered the one and one-half room apartment of the defendant at 40 East Oak Street, pursuant to a search warrant. Officer Zablocki, who had been assigned to the gambling unit for one year, testified that they found the defendant alone when they entered the apartment. Officer Zablocki stated that he had previously made about fifty arrests on gambling charges and had testified in court in twenty-

five cases where he was called upon to read certain writings and render an opinion as to what the writings constituted. In the present case he identified two sheets found in the defendant's apartment near the telephone which, in his opinion, over objections, contained bets. He interpreted the writings on the sheets as containing bets on different baseball games and parlay bets in specific dollar amounts. Officer Zablocki also found another small slip of paper which he called a "slough sheet," which he said contained the amount each individual better won or lost.

Officer Zablocki further testified that during the thirty minutes they were in the apartment the telephone rang four or five times. The first caller said "Obie" and when the officer answered "yes" the party hung up. He noted individual bets that were made in subsequent phone calls on a piece of paper. One was for Ben for a $100 wager on the Phillies. The next call was for a $100 wager on the New York Yankees. On cross-examination Officer Zablocki interpreted some of the markings on the sheets, but admitted that he could not understand many of the other markings.

The defendant, testifying on his own behalf, stated that he was single and that he had resided in the apartment for five months before his arrest. He said he was a steward and host of the Whiskey A-Go-Go for the past three years. He earned $275 per week and had 23 employees under his jurisdiction. He said that when Officer Zablocki looked at the sheets of paper found in his apartment, he asked "what is this Hebrew." Mr. Oberlander further testified that the police searched his apartment which he said he also used as an office where important entertainers and assistants would come to discuss their problems and negotiate contracts. He stated that he never saw the sheets in question before the arrest and that they may have been left by any of his many visitors. On cross-examination he testified that the nota-

tions on the sheets were not in his handwriting. Over objections the court permitted the prosecutor to require the defendant to write the alphabet from A to Z and the numbers 1 through 0 and to sign his name three times on a piece of lined paper. This paper was introduced into evidence over the defendant's objections. Oberlander also testified that Officer Zablocki answered the telephone, but that he did not observe the officer write anything down. He also denied that he was known as Obie.

The defendant contends that Officer Zablocki was erroneously permitted to give his opinion "as an alleged 'expert' that certain pieces of paper with writing were 'baseball bets.'" The defendant contends that a proper foundation was not laid for this witness's testimony.

 It has been well established that the admissibility of expert testimony is to be determined by the trial judge and a wide latitude of discretion is given to the court in the determination of such admissibility, unless it is clearly and prejudicially erroneous. People v. Harges, 87 Ill App2d 376, 231 NE2d 650. The expert's opinion, however, may be accepted or rejected by the trial court. Expert testimony is admissible when experience and observation in a special calling gives the expert knowledge of a subject beyond that of persons of common intelligence and ordinary experience. People v. Belcastro, 356 Ill 144, 190 NE 301. An expert has been defined as a person who is qualified, either by actual experience or by careful study, and may be competent to testify as an expert in proper circumstances although his knowledge was acquired through practical experience rather than scientific study, training or research. Pearson v. Zehr, 138 Ill 48, 29 NE 854. There is no precise requirement as to the mode in which skill or experience shall have been acquired.

██ Applying these principles to the present case we do not think that the trial court erred in allowing Officer Zablocki to testify as an expert. The record reveals that

Officer Zablocki had been assigned to the gambling unit of the Vice Squad for one year, had participated in over 50 gambling arrests during that period, and had testified in 25 trials stemming from those arrests.

The defendant informs us that the situation in the case at bar is similar to that in People v. McClellan, 34 Ill2d 572, 218 NE2d 97. In that case the police officer testified that they had made three previous arrests based on information given to them by an informer. The reversal in McClellan turned on the fact that it was not shown that the informer's information previously given had proven to be accurate. The holding there relates to reliability of an informer where an arrest was made without a warrant. In our opinion, the McClellan holding has no applicability to the qualifications of an expert witness.

The defendant stresses that from the present state of the record, it is clear that the officer only guessed, surmised and believed that the written items were gambling wagers. "For the present state of the record, it is impossible to determine whether the witness was accurate in his beliefs which were expressed in court." We must note, however, that in addition to the disputed expert testimony of Officer Zablocki, the court had at its disposal the actual exhibits involved and could have rejected the opinions of the witness. The weight and credibility to be given this evidence was for the trial court to decide and we will not disturb its finding on the state of this record. People v. Harges, 87 Ill App2d 376, 231 NE2d 650.

It is also contended that the defendant was denied his constitutional right to cross-examine Officer Zablocki. The defendant particularly raises this objection to the following ruling of the trial court:

Q. Now, I think the State's Attorney asked you about a number of times that you testified in court and you said about 25 times, is that right?

A. That is true, sir.

Q. When was the last time you testified in court, Officer Zablocki?

A. Monday of this week in Branch 27.

Q. In Branch 27?

A. Yes.

Q. What was the name of the case?

The Court: Sustained.

██ ██ The defendant compares the curtailment of this inquiry to the situation where a prosecutor refused to give a defendant the true name of a witness, as occurred in Smith v. Illinois, 390 US 129. We are not in accord. The record clearly shows, in the case at bar, that the officer was extensively cross-examined about his qualifications to give the opinion testimony. The limit to which cross-examination should be permitted rests soundly in the discretion of the trial judge, and where there has not been an abuse of that discretion, we will not disturb the conviction. People v. Woods, 26 Ill2d 582, 187 NE2d 692.

██ The defendant's final contention is that the evidence was insufficient to sustain the conviction. This claim is another attack on the testimony of Officer Zablocki which we have already adequately discussed and need not repeat. The fact that the officer could not interpret all of the markings on the sheets of paper, but could only state his best judgment, was a factor to be considered by the trier of the fact. Another factor that was considered by the trial judge was the officer's testimony that four or five calls were made to the apartment, two of the callers hung up after the officer answered and two of which were for the purpose of making bets. The court obviously rejected as incredible the testi-

475

mony of the defendant that he had not seen the sheets of paper containing notations even though they were found lying next to his telephone in his small apartment. It is well established that we will not disturb the findings of the trier of the fact and substitute our own conclusions unless the proof is so unsatisfactory as to justify a reasonable doubt as to the defendant's guilt. After a careful examination of the record we cannot say that the conclusion of the trial court was unwarranted. The evidence was sufficient to sustain the conviction.

The judgment of the Circuit Court is therefore affirmed.

Affirmed.

ADESKO, P. J. and MURPHY, J., concur.