(No. 75279.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. CHESTER NOVAK, Appellant.

*Opinion filed September 22, 1994.—Rehearing denied December 5, 1994.*

HEIPLE, J., dissenting.

NICKELS, J., joined by HEIPLE and McMORROW, JJ., also dissenting.

Eugene O'Malley, of Chicago, for appellant.

Roland Burris, Attorney General, of Springfield, and Jack O'Malley, State's Attorney, of Chicago (Terence M. Madsen, Assistant Attorney General, of Chicago, and Renee G. Goldfarb, Peter Fisher and Veronica X. Calderon, Assistant State's Attorneys, of counsel), for the People.

JUSTICE FREEMAN delivered the opinion of the court:

Following a jury trial in the circuit court of Cook County, defendant, Chester Novak, was convicted of aggravated criminal sexual assault. (Ill. Rev. Stat. 1989, ch. 38, par. 12—14(b)(1).) Defendant was sentenced to a prison term of 11 years, followed by a mandatory supervised release period of three years. The appellate court affirmed. (242 Ill. App. 3d 836.) We allowed defendant's petition for leave to appeal (134 Ill. 2d R. 315(a)), and now affirm the appellate court.

BACKGROUND

The appellate court recited the trial testimony at length. We need not detail it here. The State's case was essentially that in the summer of 1989, defendant was a 31-year-old baseball coach. He coached four boys' baseball teams. On several occasions, defendant lured J.R.H., the 10-year-old victim in this case, to defendant's living quarters. Defendant accomplished this under the pretenses of improving the victim's baseball skills, or

performing research for a book or a thesis for a master's degree. On these occasions in defendant's rooms, defendant at various times blindfolded the victim, tied the victim's hands behind his back, choked the victim, rubbed against the victim, and inserted his penis into the victim's mouth. 242 Ill. App. 3d at 842-47.

The defense case was essentially that defendant only applied various sets of muscle strength and flexibility exercises on the victim's neck and shoulders. Defendant denied tying the victim's hands. However, defendant did place the victim's arms behind his back and restrict the victim's arm movements, so the arms would not interfere with the training program. Also, during some of these exercises, defendant's waist came into contact with the victim. (242 Ill. App. 3d at 847-49.) Defendant did tell the victim and other players on his teams not to perform these exercises with any other partner. Defendant was concerned that they could hurt themselves if they performed these exercises with untrained partners. We will refer to additional pertinent facts as they relate to the three issues defendant raises before this court.

## DISCUSSION

Defendant contends he did not receive a fair trial because the trial judge: (1) erroneously allowed lay opinion witnesses to testify to matters beyond the scope of their personal knowledge; (2) erroneously refused defendant's tendered jury instruction on aggravated criminal sexual abuse as a lesser included offense of aggravated criminal sexual assault; and (3) used erroneous Illinois Pattern Jury Instructions concerning other-crimes evidence and out-of-court statements by the child-victim to his mother.

### I. Opinion Testimony

The defense case was that defendant only applied various sets of muscle strength and flexibility exercises

to the victim's neck and shoulders. Defendant testified that these exercises were endorsed in the literature of the field, some of which he admitted into evidence. Several of these publications described neck strengthening exercises that defendant claimed to use. Defendant also admitted into evidence an article that recommended the use of a blindfold as an aid in teaching baseball. The blindfold teaches a player how to improve his or her baseball skills by directing the player to sense exact body movements.

The State called Thomas Milanovich and Michael Lenti as rebuttal evidence concerning defendant's alleged training methods. Defendant objected, contending that they were not experts in the field of athletic training. The State responded that the witnesses were not being called as experts, but rather as lay witnesses "who have familiarity in the field of strength training and exercising." After the State's offer of proof for each witness, the trial judge allowed the witnesses to testify.

Milanovich graduated from the University of Wisconsin in 1975. His minor field of study was health. He took courses in anatomy, physiology, and kinesiology, which is the study of mechanical and anatomical principles in relation to human movement. Milanovich played professional football in the late 1970s and early 1980s. In 1977, he opened a gymnasium whose patrons included children and professional athletes. He had been a personal trainer for a few professional baseball players. He kept current with the latest techniques in strength training through the literature in the field and attending seminars.

Milanovich testified that he would not train a 10- to 13-year-old child by using a blindfold, tying the child's hands behind the back, or applying pressure to the child's neck. In Milanovich's opinion, neck strengthening exercises are used for contact sports, such as football.

Neck muscle strength is not related to throwing a baseball. Also, he preferred to include parents in training children rather than to exclude them.

Milanovich also gave his opinion on the literature that defendant presented. In Milanovich's opinion, the publications that discussed neck exercises pertained to contact sports such as football. The publications did not have anything to do with strengthening the arm for throwing a baseball. Also, the article that discussed blindfolding did so in the context of training hearing-impaired children.

Michael Lenti was a trainer at a health club during college. He played professional baseball for $2^1/2$ years and semiprofessional baseball for nine years. At the time of trial, he continued to play semiprofessional baseball, and served as an assistant athletics director at DePaul University in charge of the facilities and the recreation intermurals.

Lenti described the exercises he used for developing his arm. In his opinion, the muscles used for throwing are those in the arm, back, shoulders, chest, and legs. Lenti further opined that there was no benefit to having a strong neck in baseball. Rather, too strong or overdeveloped a neck would be "a hindrance more than a help." He had never attended a training session where the trainee was blindfolded, or where the trainee's arms were tied behind his or her back. Lenti trains children occasionally; he has never worked on their necks or advised parents not to attend.

Lenti also gave his opinion on the literature that defendant presented. In Lenti's opinion, the publications on neck exercises involved football and not baseball. The neck exercises described therein were isometric exercises for strength, which is not needed for baseball, and not for flexibility, which is needed. Lenti had never done or seen anyone else do any of these exercises for

baseball. In his opinion, the article on blindfolding was directed at training handicapped children. He disagreed with the author's conclusion that this technique should be applied to nonhandicapped players.

On appeal, defendant repeats his contention that the testimony of Milanovich and Lenti was inadmissible. He claims that it was beyond the scope of lay witness opinion testimony. He also challenges their qualifications as experts. He argues that the testimony was prejudicial because it could have led the jury to believe that defendant lied about his alleged training program.

The appellate court upheld the trial judge's admission of Milanovich's and Lenti's testimony. Although the testimony was admitted as lay witness opinion testimony, the appellate court referred to the legal principles pertaining to expert testimony. The appellate court did not discuss whether the testimony of Milanovich and Lenti was admissible either as lay witness opinion testimony or expert testimony. Rather, the court concluded that even if the State's rebuttal required expert testimony, defendant was not prejudiced by the admission of Milanovich's and Lenti's testimony, regardless of its label. 242 Ill. App. 3d at 861-62.

We agree with the appellate court's conclusion upholding the admission of Milanovich's and Lenti's testimony. However, we do so for a different reason. The question before a reviewing court is the correctness of the result reached by the lower court and not the correctness of the reasoning upon which that result was reached. (*People v. York* (1963), 29 Ill. 2d 68, 71.) Therefore, as a reviewing court, we can sustain the decision of a lower court for any appropriate reason, regardless of whether the lower court relied on those grounds and regardless of whether the lower court's reasoning was correct. (*People v. Morgan* (1991), 142 Ill. 2d 410, 457-58.) Specifically, "[w]here a trial court's

admission of evidence is proper on some ground, it will not be disturbed even though the court gave the wrong reasons." *People v. Church* (1981), 102 Ill. App. 3d 155, 166; accord *People v. Thompkins* (1988), 121 Ill. 2d 401, 428.

We initially conclude that the testimony of Milanovich and Lenti was inadmissible as lay witness opinion testimony. Illinois courts refer to Rule 701 of the Federal Rules of Evidence in considering the admissibility of lay witness opinion testimony. (M. Graham, Cleary & Graham's Handbook of Illinois Evidence § 701.1, at 482 (5th ed. 1990).) Rule 701 provides that if a witness is not testifying as an expert, his or her opinion testimony is limited to those opinions or inferences that are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue. Fed. R. Evid. 701, quoted in *Freeding-Skokie Roll-Off Service, Inc. v. Hamilton* (1985), 108 Ill. 2d 217, 222.

Lay witness opinion testimony is admissible where the facts could not otherwise be adequately presented or described to the fact finder in such a way as to enable the fact finder to form an opinion or reach an intelligent conclusion. Lay witnesses may relate their opinions or conclusions on what they observed because it is sometimes difficult to describe a person's mental or physical condition, character or reputation, or the emotions manifest by his or her acts; or things that occur and can be observed, including speed, appearance, odor, flavor, and temperature. *United States v. Skeet* (9th Cir. 1982), 665 F.2d 983, 985; accord *People v. Burton* (1972), 6 Ill. App. 3d 879, 886; 1 S. Gard, Illinois Evidence Manual § 7:03 (2d ed. 1979).

The limitation that lay witness opinion testimony be rationally based on the witness' perception reflects the general requirement that a witness must have personal

knowledge of the matter to testify to it. (*Joy Manufacturing Co. v. Sola Basic Industries, Inc.* (3d Cir. 1982), 697 F.2d 104, 111; accord Fed. R. Evid. 602; M. Graham, Cleary & Graham's Handbook of Illinois Evidence § 701.1, at 482 (5th ed. 1990).) The testimony must be based on concrete facts perceived from the witness' own senses. (*Randolph v. Collectramatic, Inc.* (10th Cir. 1979), 590 F.2d 844, 847-48; 1 J. Strong, McCormick on Evidence § 11, at 46 n.22 (4th ed. 1992); 1 S. Gard, Illinois Evidence Manual § 7:02 (2d ed. 1979).) Personal knowledge of a fact cannot be based on the statement of another. (*United States v. Owens* (9th Cir. 1986), 789 F.2d 750, 754.) The limitation essentially requires that the fact finder receive the best evidence available—firsthand knowledge rather than second-hand knowledge. *United States v. Hoffner* (10th Cir. 1985), 777 F.2d 1423, 1425; *Joy Manufacturing Co.*, 697 F.2d at 111.

In the present case, the testimony of Milanovich and Lenti went beyond the scope of lay witness opinion testimony. These witnesses were called for rebuttal evidence concerning defendant's alleged training methods. However, these witnesses did not see defendant administer any of these exercises to the victim or anyone else. They lacked first-hand knowledge upon which to base their opinion testimony.

Rather, Milanovich and Lenti based their conclusions on second-hand knowledge that included the literature defendant presented (see *C. Itoh & Co. (America), Inc. v. M/V Hans Leonhardt* (E.D. La. 1989), 719 F. Supp. 514, 515), or their responses to hypothetical questions asked by the prosecutor that sought expert opinion on the subject of strength training (see *White v. Walker* (5th Cir. 1991), 950 F.2d 972, 979). As lay witnesses, their opinions could not have been based on concrete facts that they perceived from their own senses. Rather, their opinions could amount only to speculative conclusions. See *Hoffner*, 777 F.2d at 1426.

The record shows that defendant challenged the qualifications of Milanovich and Lenti as expert witnesses. However, we conclude that the testimony of Milanovich and Lenti was admissible as expert testimony. An individual will be permitted to testify as an expert if that person's experience and qualifications afford him or her knowledge that is not common to laypersons, and where such testimony will aid the fact finder in reaching its conclusion. (*People v. Jordan* (1984), 103 Ill. 2d 192, 208.) The indicia of expertise is not an assigned level of academic qualifications. Rather, the test is whether the expert has knowledge and experience beyond the average citizen that would assist the jury in evaluating the evidence. (*People v. Coleman* (1990), 205 Ill. App. 3d 567, 584.) The expert may gain his or her knowledge through practical experience rather than scientific study, training, or research. There is no precise requirement as to how the expert acquires skill or experience. (*People v. Oberlander* (1969), 109 Ill. App. 2d 469, 473.) Regardless of how specialized knowledge is acquired, whether through education, training, experience, or a combination of each, if the witness possesses such knowledge, he or she may testify as an expert. *Coleman*, 205 Ill. App. 3d at 584.

The burden of establishing the qualifications of an expert witness is on the proponent of the expert's testimony. The determination of whether a witness qualifies as an expert is within the sound discretion of the trial court. *Jordan*, 103 Ill. 2d at 208.

In the present case, Milanovich and Lenti met these qualifications. Through education, training, experience, or a combination of each, these witnesses possessed knowledge that is not common to the average citizen. Further, this knowledge aided the jury in reaching its conclusion. We cannot say that the trial court abused its discretion in admitting this testimony.

## II. Lesser Included Offense

Defendant next contends that the trial judge erroneously refused his tendered jury instruction on aggravated criminal sexual abuse. He asserts that he was entitled to have the jury instructed on aggravated criminal sexual abuse because that offense is a lesser included offense of aggravated criminal sexual assault.

A review of the pertinent legal principles is necessary to better understand the parties' arguments on appeal. No person can be convicted of an offense that he or she has not been charged with committing. However, a defendant may be convicted of an offense not expressly included in the charging instrument if that offense is a lesser included offense of the crime expressly charged. *People v. Jones* (1992), 149 Ill. 2d 288, 292; *People v. Lewis* (1980), 83 Ill. 2d 296, 300.

A lesser included offense is a valuable tool for a defendant, a prosecutor, and society generally. For a defendant, an instruction on a lesser included offense provides an important third option to the jury. If the jury believes that defendant was guilty of something, but uncertain whether the charged offense had been proved, it might convict defendant of the lesser offense, rather than convict or acquit him of the greater offense. *People v. Bryant* (1986), 113 Ill. 2d 497, 502 (and cases cited therein).

For a prosecutor, a defendant may not automatically go free if the evidence fails to prove an essential element of the greater offense. For society, the punishment that it imposes on a criminal may conform more accurately to the crime actually committed. Note, *The Lesser Included Offense Doctrine in Pennsylvania: Uncertainty in the Courts*, 84 Dick. L. Rev. 125, 126 (1979).

Section 2—9 of the Criminal Code of 1961 defines an included offense in pertinent part as an offense that "[i]s established by proof of the same or less than all of the

facts or a less culpable mental state (or both), than that which is required to establish the commission of the offense charged." Ill. Rev. Stat. 1989, ch. 38, par. 2—9(a).

Unfortunately, the statutory definition does not specify what source to examine in deciding whether a particular offense is a lesser included offense of another. Three general approaches have been identified: (1) the abstract statutory definition of the greater crime; (2) the greater crime as it is alleged in the charging instrument; or (3) the greater crime as its necessary elements are proved at trial. *Bryant*, 113 Ill. 2d at 503, quoting *People v. Mays* (1982), 91 Ill. 2d 251, 255; *People v. Wys* (1982), 103 Ill. App. 3d 273, 275-77.

The first test, the "abstract elements" approach, is generally described as the strictest. (*E.g.*, Ettinger, *In Search of a Reasoned Approach to the Lesser Included Offense*, 50 Brook. L. Rev. 191, 198 (1984); Koenig, *The Many-Headed Hydra of Lesser Included Offenses: A Herculean Task for the Michigan Courts*, 1975 Det. C.L. Rev. 41, 44.) Under this approach, the abstract statutory elements of the greater offense are compared with those of the alleged lesser offense. "If all of the elements of the lesser offense are included within the greater and the lesser does not have any element not included in the greater, the lesser is deemed to be a lesser included offense." *Wys*, 103 Ill. App. 3d at 275-76.

The abstract elements approach does not look to the facts of a crime as either charged in the particular charging instrument or proved at trial. Rather, the test considers solely theoretical or practical impossibility. (50 Brook. L. Rev. at 197; 84 Dick. L. Rev. at 129 n.26; 1975 Det. C.L. Rev. at 46.) Thus, it must be "impossible to commit the greater offense without necessarily committing the lesser offense." *People v. Delk* (1976), 36 Ill. App. 3d 1027, 1041.

The second test, the "charging instrument" ap-

proach, also known as the "pleadings" or "cognate" theory, has been described as a "more lenient" or "intermediate" standard. (50 Brook. L. Rev. at 197, 203.) This approach looks to the facts alleged in the charging instrument in identifying a lesser included offense. Under this approach, an offense is deemed to be a lesser included offense if it is described by the charging instrument. *Wys,* 103 Ill. App. 3d at 276.

The charging instrument approach does not require the lesser crime to be a theoretically or practically "necessary" part of the greater crime. Rather, the lesser crime need only relate to the greater to the extent that the charging instrument describes the lesser. (84 Dick. L. Rev. at 127-28.) The "lesser offense must have a broad foundation in the instrument charging the greater," or at least "set out the main outline of the lesser offense." *Bryant,* 113 Ill. 2d at 505.

The third test, the "factual" or the "evidence" approach, has been described as the "broadest" or "most lenient" approach. (50 Brook. L. Rev. at 197, 205.) This approach looks to the facts adduced at trial on the offense charged. *Wys,* 103 Ill. App. 3d at 276.

This test is also known as the "inherent relationship" approach. Not only must the evidence adduced at trial in proof of the greater offense establish the lesser offense, but also, an "inherent relationship" must exist between the greater and lesser offenses. In other words, the greater and lesser offenses must relate to the protection of the same interests. They must be so related that in the general nature of those crimes, proof of the lesser offense is necessarily, though not invariably, presented as part of the showing of the commission of the greater offense. *People v. Dace* (1984), 104 Ill. 2d 96, 100, quoting *United States v. Whitaker* (D.C. Cir. 1971), 447 F.2d 314, 319.

Once a lesser included offense is identified, the

question remains whether the jury should be instructed on the lesser offense. The identification of a lesser included offense does not automatically give rise to a correlative right to have the jury instructed on the lesser offense. (*Wys*, 103 Ill. App. 3d at 277.) Rather, an "independent prerequisite" must be met for the giving of a lesser included offense instruction (*Schmuck v. United States* (1989), 489 U.S. 705, 716 n.8, 103 L. Ed. 2d 734, 746 n.8, 109 S. Ct. 1443, 1451 n.8), regardless of the approach used in identifying the lesser included offense. This independent prerequisite involves an examination of the evidence presented at trial.

A defendant is entitled to a lesser included offense instruction only if the evidence would permit a jury rationally to find the defendant guilty of the lesser included offense and acquit him or her of the greater offense. (*Keeble v. United States* (1973), 412 U.S. 205, 208, 36 L. Ed. 2d 844, 847, 93 S. Ct. 1993, 1995.) A lesser included offense instruction is not proper where, on the evidence presented at trial, the factual issues to be resolved by the jury are the same as to both the lesser and greater offenses. A lesser included offense instruction is proper only where the charged greater offense requires the jury to find a disputed factual element that is not required for conviction of the lesser included offense. *Sansone v. United States* (1965), 380 U.S. 343, 349-50, 13 L. Ed. 2d 882, 888, 85 S. Ct. 1004, 1009; see *People v. Cramer* (1981), 85 Ill. 2d 92, 98-100.

This evidentiary requirement is usually satisfied by the presentation of conflicting testimony on the element that distinguishes the greater offense from the lesser offense. However, where the testimony is not conflicting, this requirement may be satisfied if the conclusion as to the lesser offense may fairly be inferred from the evidence presented. (*United States v. Medina* (7th Cir. 1985), 755 F.2d 1269, 1273.) The amount of evidence nec-

essary to meet this factual requirement, *i.e.*, that tends to prove the lesser offense rather than the greater, has been described as "any," "some," "slight," or "very slight." *People v. Upton* (1992), 230 Ill. App. 3d 365, 374 (and cases cited therein); *People v. Willis* (1977), 50 Ill. App. 3d 487, 490-91.

In the present case, the appellate court upheld the trial judge's refusal of defendant's proffered instruction on aggravated criminal sexual abuse. Using the abstract elements approach, the appellate court held that aggravated criminal sexual abuse is not a lesser included offense of aggravated criminal sexual assault. 242 Ill. App. 3d at 860-61.

Defendant contends that this court uses the charging instrument approach in identifying lesser included offenses. Defendant argues that under this approach, or even under the abstract elements approach, aggravated criminal sexual abuse is a lesser included offense of aggravated criminal sexual assault. The State responds that the abuse offense is not included within the assault offense.

Further, the State urges this court to adopt the abstract elements approach in identifying lesser included offenses. Defendant responds that the State waived this argument on appeal. At the jury instruction conference, the State objected to defendant's proffered aggravated criminal sexual abuse instruction on the grounds that the record lacked evidence to support the instruction. Defendant argues that since the State objected on this evidentiary basis, the State could not raise this new argument before this court.

However, the State is the appellee before this court. An appellee may raise any argument or basis supported by the record to show the correctness of a judgment, even though the appellee had not previously advanced such an argument. (*People v. P.H.* (1991), 145 Ill. 2d 209,

220.) Therefore, we will address the State's argument that we adopt the abstract elements approach.

This is a difficult issue. The problem of applying the lesser included offense doctrine "has challenged the effective administration of justice for centuries." (*Brown v. State* (Fla. 1968), 206 So. 2d 377, 380; accord *Fuller v. United States* (D.C. Cir. 1967), 407 F.2d 1199, 1228.) Each of the three approaches used to identify lesser included offenses has both advantages and disadvantages.

We begin with the inherent relationship approach. The lesser included offense is identified from the evidence of what defendant actually did. The main advantage of this approach is its flexibility. This approach goes furthest toward the goal of accurately conforming punishment to the crime actually committed. 50 Brook. L. Rev. at 208.

However, the flexibility of the inherent relationship approach is also its disadvantage. It is too broad. A lesser included offense cannot be identified until the close of the evidence. Thus, both the defendant and the prosecution lack advance notice of lesser offenses. The parties would have to prepare to litigate all possible lesser offenses, or risk preparing less than all possible lesser offenses, or only the charged offense. Blair, *Constitutional Limitations on the Lesser Included Offense Doctrine*, 21 Am. Crim. L. Rev. 445, 449-50 (1984).

Further, the requirement of an inherent relationship between the lesser and charged greater offenses is necessarily subjective. (50 Brook. L. Rev. at 208.) Also, since this approach operates on a case-by-case basis, it is "very nearly impossible to formulate general governing principles" on the identification of lesser included offenses. (*Dace*, 104 Ill. 2d at 102.) This court rejected this approach in *Dace* and we continue to do so.

We next examine the abstract elements approach.

Proponents of this approach assert that it offers the most certainty and predictability in identifying lesser included offenses. This approach promotes judicial economy because it requires only a textual comparison of criminal statutes. The facts of a particular case are irrelevant. An appellate court can identify a lesser included offense without reviewing the entire evidentiary record. Absent statutory modification, a single judicial interpretation suffices to categorize the relationship between any two criminal offenses for all subsequent cases. Thus, both sides in subsequent prosecutions are notified as to what lesser included offenses are available and can plan their trial strategies accordingly. (*Schmuck v. United States* (1989), 489 U.S. 705, 720-21, 103 L. Ed. 2d 734, 749, 109 S. Ct. 1443, 1453; 50 Brook. L. Rev. at 201.) We note that Federal courts use this approach. *Schmuck*, 489 U.S. at 716, 103 L. Ed. 2d at 746, 109 S. Ct. at 1450.

This purported advantage of the abstract elements approach is precisely its disadvantage. It is inherently inflexible. "Judicial economy" has nothing to do with the purpose of the doctrine: to conform more accurately punishment to the crime actually committed. (84 Dick. L. Rev. at 126.) Since the abstract elements approach expressly rejects reference to the facts of a particular case, this approach does not adequately serve this goal. 50 Brook. L. Rev. at 202; 21 Am. Crim. L. Rev. at 447-48.

Also, the abstract elements approach does not necessarily produce certain and predictable results. This approach "focuses on semantics instead of facts." (50 Brook. L. Rev. at 202.) The identification of lesser included offenses becomes an exercise in statutory interpretation that, again, ignores the purpose of the doctrine. (84 Dick. L. Rev. at 129-30; 1975 Det. C.L. Rev. at 46-47.) For example, the appellate court in the present case used the abstract elements approach in holding

that aggravated criminal sexual abuse is *not* a lesser included offense of aggravated criminal sexual assault. In so doing, the court disagreed with other appellate court cases that likewise used the abstract elements approach in holding that aggravated criminal sexual abuse *is* a lesser included offense of aggravated criminal sexual assault. (242 Ill. App. 3d at 860-61 (rejecting, *inter alia, People v. Creamer* (1986), 143 Ill. App. 3d 64).) We disapprove of the abstract elements approach and reaffirm our preference for the charging instrument approach.

The charging instrument approach is well established. Certainly, the abstract elements approach is also well established. (See *Schmuck*, 489 U.S. at 719-20, 103 L. Ed. 2d at 748-49, 109 S. Ct. at 1452; *People v. Rainbolt* (1977), 52 Ill. App. 3d 374, 376.) However, "[a]t common law a jury *** might convict of a cognate offense of the same character but of a less aggravated nature *if the words of the indictment* were wide enough to cover such an offence." (Emphasis added.) 11(2) Hailsham, Halsbury's Laws of England par. 1029, at 859 (4th ed. 1990); see *Brown*, 206 So. 2d at 380.

We note the appellate court's observation that Illinois courts used the abstract elements approach from early cases until 1981, when this court rejected the abstract elements approach and adopted the charging instrument approach in *People v. Cramer* (1981), 85 Ill. 2d 92. (*People v. Krueger* (1988), 176 Ill. App. 3d 625, 628; *People v. Cashen* (1983), 112 Ill. App. 3d 1054, 1056; *Wys*, 103 Ill. App. 3d at 276.) This observation is incorrect. The charging instrument approach was well recognized in Illinois long before *Cramer*. See, *e.g., People v. Lewis* (1940), 375 Ill. 330, 334-36; *People v. Gilday* (1932), 351 Ill. 11, 21-22; *Earll v. People* (1874), 73 Ill. 329, 332-33.

The charging instrument approach best serves the

purposes of the lesser included offense doctrine. This approach tempers harsh mechanical theory with the facts of a particular case. The charging instrument approach results in a broader range of possible lesser included offenses, based on the allegations in the charging instrument. This supports the goal of more accurately conforming punishment to the crime actually committed. Further, since the charging instrument provides to the parties a closed set of facts, both sides have notice of all possible lesser included offenses and can plan their trial strategies accordingly. 50 Brook. L. Rev. at 204; 84 Dick. L. Rev. at 129; see, *e.g.*, *People v. Lyons* (1974), 26 Ill. App. 3d 193, 198-99.

The charging instrument approach has been criticized for granting too much discretion to the prosecution. Critics note that the decision of which specific charges to bring in a charging instrument is almost entirely within the discretion of the prosecutor. Since this approach looks to the facts alleged in the charging instrument, critics reason that the prosecution can limit the availability of lesser included offenses by how it drafts the instrument. 50 Brook. L. Rev. at 204.

This criticism is not well founded. It is settled "that the State's Attorney, as a member of the executive branch of government, is vested with exclusive discretion in the initiation and management of a criminal prosecution. [Citations.] That discretion includes the decision whether to prosecute at all, as well as to choose which of several charges shall be brought." (*People ex rel. Daley v. Moran* (1983), 94 Ill. 2d 41, 45-46.) A defendant does not have the right to choose his or her prosecution or punishment. The charging instrument approach is consistent with these principles. *People v. Barkenlau* (1982), 105 Ill. App. 3d 785, 789-90; *Wys*, 103 Ill. App. 3d at 278-79.

In the present case, using the charging instrument

approach, we conclude that aggravated criminal sexual abuse is not available to defendants as a lesser included offense of aggravated criminal sexual assault as charged in the indictment. Defendant was indicted as follows:

"Chester M. Novak committed the offense of aggravated criminal sexual assault in that he was seventeen years of age or over and committed an act of sexual penetration upon [the victim], to wit: contact between Chester M. Novak's penis and [the victim's] mouth and [the victim] was under thirteen years when the act of sexual penetration was committed, in violation of [Ill. Rev. Stat. 1989, ch. 38, par. 12—14(b)(1)]."

An accused commits aggravated criminal sexual abuse if "the accused was 17 years of age or over and (i) commits an act of sexual conduct with a victim who was under 13 years of age when the act was committed." (Ill. Rev. Stat. 1989, ch. 38, par. 12—16(c)(1)(i).) Sexual conduct means, in pertinent part, "any intentional or knowing touching or fondling by *** the accused, either directly or through clothing, of *** any part of the body of a child under 13 years of age, for the purpose of sexual gratification or arousal ***." Ill. Rev. Stat. 1989, ch. 38, par. 12—12(e).

We conclude that the indictment against defendant does not describe the foundation or main outline of aggravated criminal sexual abuse. The indictment does not describe any touching or fondling of the victim's body parts for the purpose of sexual gratification or arousal.

Citing *People v. Allensworth* (1992), 235 Ill. App. 3d 185, defendant contends that a charge of aggravated criminal sexual abuse need not specifically allege that the sexual conduct was for the purpose of sexual gratification or arousal. This contention is erroneous. In *Allensworth* and *People v. Balle* (1992), 234 Ill. App. 3d 804, each defendant was charged with aggravated criminal sexual abuse and accused of committing sexual

conduct. The court in each case held that the words "sexual conduct" were alone sufficient to inform the defendant with reasonable certainty of the charge against him. *Allensworth*, 235 Ill. App. 3d at 188-89; *Balle*, 234 Ill. App. 3d at 811-13.

In the present case, defendant was charged with aggravated criminal sexual assault. The indictment describes an act of "sexual penetration," specifically that contact occurred between defendant's penis and the victim's mouth. Sexual penetration refers to aggravated criminal sexual assault. (Ill. Rev. Stat. 1989, ch. 38, pars. 12—12(f), 12—14(b)(1).) This was not an act of "sexual conduct," which refers to aggravated criminal sexual abuse. Ill. Rev. Stat. 1989, ch. 38, pars. 12—12(e), 12—16(c)(1)(i).

These two types of conduct are different. Offenses based on sexual penetration require contact between the sex organ of one person and the sex organ, mouth, or anus of another person, with an implied mental state of intent, knowledge, or recklessness. However, offenses based on sexual conduct require touching or fondling for the purpose of sexual gratification or arousal. (*People v. Terrell* (1989), 132 Ill. 2d 178, 209-11; *People v. Burmeister* (1986), 147 Ill. App. 3d 218, 222-24.) The indictment in the present case does not describe aggravated criminal sexual abuse. We uphold the trial judge's refusal to instruct the jury on aggravated criminal sexual abuse.

### III. Pattern Instructions

Defendant lastly contends that the trial judge used erroneous Illinois Pattern Jury Instructions concerning other-crimes evidence and out-of-court statements by the child-victim to his mother.

The purpose of jury instructions is to provide to the jury the correct legal principles applicable to the evidence, so that the jury may reach a correct conclusion

according to the law and the evidence. (*People v. Gambony* (1948), 402 Ill. 74, 81-82.) In criminal cases, where Illinois Pattern Jury Instructions contain an applicable instruction giving due consideration to the facts and the governing law, the IPI instruction is to be used, unless the court determines that it does not accurately state the law. (134 Ill. 2d R. 451(a).) In determining the adequacy of instructions, a reviewing court will consider all of the instructions as a whole to ascertain if they fully and fairly cover the law. *People v. Housby* (1981), 84 Ill. 2d 415, 433-34; *People v. Stevens* (1957), 11 Ill. 2d 21, 29.

## Other-Crimes Evidence

The State presented the testimony of three other children as other-crimes evidence. Defendant presented an innocent construction of his acts. The trial judge gave to the jury over defendant's objection Illinois Pattern Jury Instructions, Criminal, No. 3.14 (2d ed. 1981) (hereinafter IPI Criminal 2d), which, modified for this case, stated:

"Evidence has been received that the defendant has been involved in offenses other than that charged in the indictment. This evidence has been received solely on the issue of defendant's *modus operandi*[,] or method of acting[,] and his intent. This evidence may be considered by you only for the limited purpose for which it was received."

Defendant contends that this instruction misstates the law. He argues that when a defendant presents an innocent construction of his or her acts in a sex offense case with a child-victim, evidence of crimes committed against other children cannot be used to prove guilty knowledge or intent.

This contention ignores the following settled principles:

"Generally, evidence of other crimes is inadmissible if relevant merely to establish the defendant's propensity to

commit crime. [Citation.] Evidence of the commission of other crimes is admissible, however, when such evidence is relevant to prove *modus operandi*, intent, identity, motive, or absence of mistake. [Citations.] In fact, this court has held that evidence of other offenses is admissible if it is relevant for any purpose other than to show the propensity to commit crime. [Citations.]" *(People v. Mc-Kibbins* (1983), 96 Ill. 2d 176, 182.)

These principles apply equally to sex offense cases with child victims. See, *e.g., People v. Soler* (1992), 228 Ill. App. 3d 183, 202-03; *People v. Jendras* (1991), 216 Ill. App. 3d 149, 158-60.

IPI Criminal 2d No. 3.14 fairly reflects the applicable law in this case. We find no error in the giving of this instruction.

*Out-of-Court Statements*

The victim's mother testified that the victim told her that defendant molested him. The trial judge gave to the jury over defendant's objection IPI Criminal 2d No. 11.67 (Supp. 1989), which, modified for this case, stated:

"You have before you evidence that [the victim] made statements to his mother concerning the offense charged in this case. It is for you to determine whether the statements were made and if so, what weight should be given to the statements. In making that determination, you should consider the age and maturity of [the victim], the nature of the statements, and the circumstances under which the statements were made."

Defendant contends that this instruction misstates the law. Defendant views the victim's out-of-court statements as hearsay that merely corroborates his in-court testimony. Defendant asserts that the instruction does not limit the jury's consideration of these hearsay statements to that purpose.

We reject this contention. Section 115—10 of the Code of Criminal Procedure of 1963 is a statutory hearsay exception that allows a child to testify that he

or she complained of a sexual act to another. The statute also allows others to testify to out-of-court statements made by the child that describe any act that is an element of the offense perpetrated upon the child. (Ill. Rev. Stat. 1989, ch. 38, par. 115—10(a).) The statute requires the giving of an instruction found at IPI Criminal 2d No. 11.67 (Supp. 1989) (now found at IPI Criminal 3d No. 11.66 (3d ed. 1992)), if such statements are admitted.

Pursuing this argument, defendant contends that section 115—10 is unconstitutional. Defendant asserts that only the courts have the power to decide how a jury should be instructed. He points out that section 115—10(c) requires that a trial court instruct a jury in a particular way. Thus, defendant reasons, the statute is an unconstitutional exercise of judicial power by the legislature.

We reject this argument, as did the appellate court. (242 Ill. App. 3d at 851-54.) In addition to the appellate court's reasoning, we note that a State legislature has the power to prescribe new and alter existing rules of evidence. *People v. Orange* (1988), 121 Ill. 2d 364, 381.

IPI Criminal 2d No. 11.67 (Supp. 1989) fairly reflects the applicable law in this case. We find no error in the giving of this instruction.

For the foregoing reasons, the judgment of the appellate court is affirmed.

*Affirmed.*

JUSTICE HEIPLE, dissenting:

The majority's decision to *sua sponte* declare that the lay witnesses who inappropriately testified to their opinions at trial were expert witnesses is, quite simply, wrong. The State did not seek to have these men declared experts, did not argue to this court that they were *de facto* experts and, in fact, offered their testimony as lay witness opinion testimony. In this closely balanced

case with diametrically conflicting evidence, the very damaging testimony of these witnesses may well have been the deciding factor in the jury's ultimate decision to convict. I therefore respectfully dissent.

· The State called, as rebuttal witnesses, Thomas Milanovich and Michael Lenti for the purpose of expressing their opinions as to whether defendant's methods of training young athletes was a sound and correct method of training baseball players. Defendant objected, arguing that the men were not qualified to testify as experts.

The State responded to this objection by affirmatively stating that "we are not calling these people as witnesses with an expert background. We are calling them simply as people who have familiarity in the field of strength training and exercise." The trial court asked, for clarification, "Specifically not coming in as experts?" The State responded, "Correct."

Despite the State's concession that these men were not being called as experts, they were allowed to: state their training techniques; review the documents that defendant testified he had relied upon; give their opinions that defendant's theories of developing the arms of young baseball players were not sound; and give the reasons for their opinions.

The majority appropriately holds that these testimonies were inadmissible as lay witness opinion testimony. Under Federal Rule of Evidence 701, adopted by this court in *Freeding-Skokie Roll-Off Service, Inc. v. Hamilton* (1985), 108 Ill. 2d 217, 222, a lay witness' opinion testimony is limited to opinions or inferences that are rationally based on his perceptions and which are helpful to the trier's understanding of the testimony or its determination of a fact in issue. The witnesses at issue did not base their disputes with defendant's techniques from their first-hand impressions of his approaches, but rather on their readings of the literature

offered by defendant and through the prosecutor's hypothetical questions on the subject of strength training. These methods of offering opinions are expressly reserved for experts, and the majority properly rules that the testimonies could not be admitted in any other way.

The majority's reasoning is that "[t]hrough education, training, experience, or a combination of each, these witnesses possessed knowledge that is not common to the average citizen. Further, this knowledge aided the jury in reaching its conclusion." (163 Ill. 2d at 104.) In other words, the majority restates the necessary elements to demonstrate an expert's qualification and then declares them met.

In the instant case, the State, for whatever reason, chose not to undertake the burden of demonstrating its witnesses' qualifications as experts. One reason may have been that it would have been unable to do so, given the only marginal knowledge either witness had of baseball training. Because the witnesses were not offered as experts, defendant did not have the opportunity to cross-examine the witnesses for the purpose of challenging their certification as experts.

Finally, it cannot be said that defendant did not suffer prejudice. There was no physical evidence in this case, and the jury had substantial difficulty in reaching a verdict. Almost four hours after it retired to deliberate, it sent a note to the judge stating that it was hung. Two hours after that it sent another note stating that it was still hung. Still another $2^{1}/_{2}$ hours elapsed, at which time the jury again sent a third note stating that it was hopelessly hung. The judge was discussing sequestration of the jury with counsel at the time the third note was sent and, before he could respond, the jury reached its verdict.

Because there was no physical evidence, the jury's

verdict was based solely on the credibility of the witnesses. The State's so-called experts were the final two witnesses to testify in the trial, their testimonies were detailed and lengthy, and they served to discredit the defendant's evidence. The prejudice of these improper testimonies is manifest and should compel this court to reverse defendant's conviction.

As a second point of departure, I disagree with the majority that there was no error in refusing an instruction on aggravated criminal sexual abuse. I therefore join Justice Nickels' dissent, where he persuasively demonstrates that this was an abuse of discretion.

I respectfully dissent.

JUSTICE NICKELS, also dissenting:

I disagree with the majority's application of the lesser included offense doctrine to bar defendant's requested jury instruction of aggravated criminal sexual abuse.

The majority engages in a thorough discussion of the three separate approaches used to determine whether one offense is a lesser included offense of another. It ultimately concludes that the "charging instrument" approach is the proper approach to be used. I agree with this conclusion because it is consistent with this court's decisions in *People v. Bryant* (1986), 113 Ill. 2d 497, and *People v. Jones* (1992), 149 Ill. 2d 288. I disagree with the majority's narrow application of that approach to the instant case.

In *Bryant*, the defendant was convicted of attempted burglary. At trial, the defendant requested a jury instruction on the lesser offense of criminal damage to property, but the trial judge refused. On appeal, the State argued that defendant was not entitled to a jury instruction because the indictment did not allege a "knowing" mental state. Knowledge was the required mental state for the lesser included offense charged in

*Bryant*. The court examined the language of the indictment and found that the indictment "implicitly" contained the mental state of knowledge. (*Bryant*, 113 Ill. 2d at 505.) Thus, the lesser offense instruction should have been given.

In *Jones*, the defendant was charged by information with armed robbery. After a bench trial, the judge found that the defendant was not guilty of armed robbery but was guilty of theft. The language of the information, to a great extent, tracked the language of the armed robbery statute. This court noted that the statutory definition of theft required an intent to permanently deprive a victim of his property. The statutory definition of armed robbery did not contain that element. Thus, some appellate court panels had concluded that theft was not a lesser included offense of armed robbery.

This court held that the information implicitly alleged theft, although the indictment did not expressly allege an intent to permanently deprive. The court found that the information adequately alleged the necessary conduct and elements for the offense of theft. The court stated that, when an individual attempts armed robbery, common sense dictates that he acted with the intent to permanently deprive the victim of the property.

In both cases, this court inferred a mental state from the language of the charging instrument. In addition, this court examined the elements of both the greater and lesser offenses. This was necessary because the indictment recited the elements of the greater offense and the court sought to determine whether the indictment alleged the elements of the lesser offense. Thus, to an extent, the charging instrument and abstract elements approaches overlap, and a court must examine the elements of both the greater and lesser offenses.

The statutes involved in the instant case are nearly

identical. Both aggravated criminal sexual assault and aggravated criminal sexual abuse require certain sexual contact between the perpetrator and the victim. Aggravated criminal sexual abuse requires that the contact be initiated "for the purpose of sexual gratification." (Ill. Rev. Stat. 1989, ch. 38, par. 12—12(e).) The aggravated criminal sexual assault statute does not include the sexual gratification language. The appellate court in this case therefore concluded that aggravated criminal sexual abuse is not a lesser included offense of aggravated criminal sexual assault. For the purpose of giving a lesser included offense instruction, I believe the court may reasonably infer that the offense of aggravated criminal sexual assault was committed "for the purpose of sexual gratification."

The purpose of giving a lesser jury instruction is to provide the jury with an important third option at trial. (163 Ill. 2d at 105.) "[W]here the jury suspects that the defendant is plainly guilty of *some* offense, but one of the elements of the charged offense remains in doubt, in the absence of a lesser offense instruction, the jury will likely fail to give full effect to the reasonable-doubt standard, resolving its doubts in favor of conviction." (Emphasis in original.) (*Schmuck v. United States* (1989), 489 U.S. 705, 717 n.9, 103 L. Ed. 2d 734, 747 n.9, 109 S. Ct. 1443, 1451 n.9, citing *Keeble v. United States* (1973), 412 U.S. 205, 36 L. Ed. 2d 844, 93 S. Ct. 1993; see also *Bryant*, 113 Ill. 2d at 502.) Defendant should not be denied an instruction simply because the alleged aggravated criminal sexual assault was not set out in the indictment in terms of sexual gratification. Furthermore, if the evidence does not support the lesser charge, the jury instruction should not be given.

I note also that several appellate panels have considered whether aggravated criminal sexual abuse is a lesser included offense of aggravated criminal sexual

assault. Most have concluded that aggravated criminal sexual abuse is a lesser included offense. (See, *e.g.*, *People v. Bell* (1992), 234 Ill. App. 3d 631; *People v. Patel* (1991), 213 Ill. App. 3d 688; *People v. Finley* (1988), 178 Ill. App. 3d 301; *People v. Smith* (1987), 152 Ill. App. 3d 589; *People v. Creamer* (1986), 143 Ill. App. 3d 64; but see *People v. Burmeister* (1986), 147 Ill. App. 3d 218.) These courts have found that the only difference between the two offenses is that aggravated criminal sexual assault requires a showing of penetration. See, *e.g.*, *Creamer*, 143 Ill. App. 3d at 70.

In the instant case, the majority applies the approach stated in *Bryant* too narrowly. The majority concludes that the language in the indictment in the instant case does not contain the foundation or main outline for the offense of aggravated criminal sexual abuse. (163 Ill. 2d at 114; *Bryant*, 113 Ill. 2d at 506.) The indictment in this case charges that defendant "committed an act of sexual penetration upon [the victim], to wit: contact between [defendant's] penis and [the victim's] mouth ***." The majority concludes that the indictment did not describe the performance of any act for the purpose of sexual gratification. Contact between defendant's penis and the victim's mouth is touching of a sexual nature. The court can reasonably infer that defendant was motivated by a desire for sexual gratification.

Once a lesser included offense is identified, a court next examines the evidence presented at trial to determine if a lesser included offense instruction is appropriate. (163 Ill. 2d at 107-08.) An instruction is appropriate "if the evidence would permit a jury rationally to find the defendant guilty of the lesser included offense and acquit him or her of the greater offense." (163 Ill. 2d at 108.) An instruction is proper where the greater offense requires the jury to find a

disputed factual element that is not required for the lesser offense. (163 Ill. 2d at 108.) The evidence presented at trial in this case could have supported a conviction for the lesser charge of aggravated criminal sexual abuse.

In *Bryant* and *Jones*, this court examined the indictment to determine whether the lesser offense was implicit in the indictment and could be reasonably inferred from the language in the indictment. In the instant case, the majority applies this approach too narrowly and bars a lesser included offense instruction. For the foregoing reasons, I believe defendant was entitled to a jury instruction on aggravated criminal sexual abuse. Because defendant did not receive a lesser included offense instruction, the cause should be reversed and remanded to the trial court for a new trial.

JUSTICES HEIPLE and McMORROW join in this dissent.