# Illinois Official Reports

## Appellate Court

---

### *In re A.F.*, 2018 IL App (3d) 170826

---

| | |
|---|---|
| Appellate Court Caption | *In re* A.F., a Minor (The People of the State of Illinois, Petitioner-Appellee, v. Gabriel F., Respondent-Appellant). |
| District & No. | Third District<br>Docket No. 3-17-0826 |
| Filed | May 3, 2018 |
| Decision Under Review | Appeal from the Circuit Court of Tazewell County, No. 12-JA-73; the Hon. Kirk D. Schoenbein, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | James D. Bradshaw, of Pekin, for appellant.<br><br>Stewart J. Umholtz, State's Attorney, of Pekin (Patrick Delfino, David J. Robinson, and Richard T. Leonard, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.<br><br>Aimee E. Dluski, of Pekin, guardian *ad litem*. |
| Panel | JUSTICE WRIGHT delivered the judgment of the court, with opinion.<br>Justices McDade and Schmidt concurred in the judgment and opinion. |

**OPINION**

¶ 1   The trial court entered orders finding respondent, Gabriel F. (father), to be an unfit parent and terminating father's parental rights concerning the minor, A.F. On appeal, father argues that the trial court's fitness determination was erroneous. We affirm.

¶ 2                                                                   FACTS

¶ 3   On October 19, 2012, the State filed a neglect petition alleging that father neglected A.F., born July 9, 2012, by subjecting the minor to an environment injurious to her welfare pursuant to section 2-3(1)(b) of the Juvenile Court Act of 1987 (705 ILCS 405/2-3(1)(b) (West 2012)). Specifically, the neglect petition alleged that on or about September 9, 2012,[1] A.F. suffered a fracture to her right femur and a fracture to her left tibia by means other than accidental while in the care of father. On December 6, 2012, the State filed a supplemental petition adding the allegation that, "During the time that the minor was hospitalized in August of 2012, multiple problems with the father were noted by hospital staff which included but were not limited to the father having disregard for the minor's pain or risks of moving the minor's fractured limb."

¶ 4   On February 28, 2013, father stipulated that the allegations of the original petition could be proven by a preponderance of the State's evidence. On that same date, the trial court entered an adjudicatory order finding A.F. neglected. On April 19, 2013, the trial court entered a dispositional order finding father unfit based on the physical abuse of A.F.

¶ 5   The injuries A.F. suffered in 2012 gave rise to criminal proceedings in Tazewell County case No. 13-CF-36 against father. The State initially charged father with the Class X felony of aggravated battery to a child. 720 ILCS 5/12-3.05(b)(1) (West 2012). However, pursuant to a plea agreement, father plead guilty to the Class 2 felony of aggravated domestic battery pursuant to section 12-3.3(a) of the Criminal Code of 2012 in that he "knowingly caused great bodily harm to A.F. (F/W DOB 7/9/12), a family member, in that he performed the acts which resulted in fractures to A.F.'s left tibia and right femur." See *id.* § 12-3.3(a). In exchange for father's guilty plea to aggravated domestic battery, the State dismissed the Class X felony of aggravated battery to a child. The trial court sentenced father to a term of seven years in the Illinois Department of Corrections. Father remained incarcerated when this appeal was filed.

¶ 6   The juvenile case proceeded over the next three years and the trial court conducted several permanency review hearings. On December 30, 2016, the State filed a petition to terminate father's parental rights. The termination petition alleged that father was depraved, pursuant to section 1(I) of the Adoption Act (750 ILCS 50/1(I) (West 2016)), because father had been "convicted of Aggravated Domestic Battery to a Minor,[2] in Tazewell County case No. 13-CF-36." On January 26, 2017, father filed an answer to the State's termination petition, which admitted to his prior conviction of aggravated domestic battery but claimed he was rehabilitated and denied that it was in A.F.'s best interests to terminate his parental rights.

---

[1]The record indicates that A.F. was hospitalized due to the incident in August of 2012, though the State's neglect petition states that the incident occurred in September of 2012.

[2]Father's conviction in Tazewell County case No. 13-CF-36 was for aggravated domestic battery not aggravated domestic battery to a minor.

¶ 7        On June 9, 2017, the trial court began a hearing on the State's termination petition. The parties agreed that the statutory provision under which the termination petition was brought should be amended to correct a scrivener's error and amend the statutory basis for the petition to section 1(D)(i) of the Adoption Act (*id.* § 1(D)(i)) instead of section 1(I). The trial court continued the hearing to August 24, 2017. On that date, the State admitted State's exhibit No. 1, a certified copy of father's conviction for aggravated domestic battery in Tazewell County case No. 13-CF-36, over father's objection, as evidence of father's depravity. Additionally, the court took judicial notice of the entire court file in Tazewell County case No. 13-CF-36 without objection from father.

¶ 8        After the State's evidence, father testified before the court and explained that he was 19 years of age at the time of his arrest in Tazewell County case No. 13-CF-36. In August 2012, around the time of the incident in this case, father lived with his infant child, A.F., and A.F.'s biological mother.

¶ 9        Father testified that he grew up with two brothers and an adopted sister, had a good relationship with his parents, had a good upbringing, was never abused, and graduated from high school in 2011. Father advised the court that, prior to his arrest in Tazewell County case No. 13-CF-36, he had been employed and his prior record included convictions of misdemeanor possession of cannabis, failure to signal, and a prior adjudication for retail theft when he was a minor. Father reported that he had previously used marijuana, mushrooms, and MDMA but stopped using drugs when his girlfriend became pregnant with A.F. Father was engaged in some DCFS services prior to his arrest in January 2013 but did not complete services, such as a drug-alcohol assessment, a psychological evaluation, or a parenting class. Father completed no additional services in prison because he was on the back of the waitlists. Father enjoys fishing, building things, playing guitar, and aquariums.

¶ 10       Father provided an explanation to the court concerning the 2012 injuries to A.F. that resulted in criminal charges against father. According to father's testimony, he accidentally fell on A.F. and broke her leg while changing her diaper in August 2012. Father admitted that his testimony was inconsistent with the agreed factual basis presented to the court as part of father's guilty plea in Tazewell County case No. 13-CF-36. Father conceded that the agreed factual basis for his guilty plea in Tazewell County case No. 13-CF-36, as recited to the trial court, established A.F.'s injuries occurred when father burped A.F. In addition, father admitted that he had given law enforcement different versions of how A.F.'s injury had occurred on prior occasions but had to tell the truth now because he did not "feel comfortable sticking to a lie." Father expected to be released from prison in January 2018, due to good behavior, with his mandatory sentence actually running to January 2021.

¶ 11       The court found father's version of events incredible and found father unfit on depravity grounds by clear and convincing evidence. The matter proceeded to a best interest hearing, and the court entered a dispositional order terminating father's parental rights on November 7, 2017. Father filed a timely notice of appeal on December 6, 2017.

¶ 12                                      ANALYSIS
¶ 13       On appeal, father argues that his prior conviction for aggravated domestic battery does not create a presumption of depravity under section 1(D)(i) of the Adoption Act (*id.*). Additionally, father argues that even if his aggravated domestic battery conviction created a

presumption of depravity, father adequately rebutted the presumption with his testimony. Consequently, father requests this court to set aside the trial court's order finding him unfit.

¶ 14 The standard of proof applied by a trial court when determining parental fitness is clear and convincing evidence. *In re D.D.*, 196 Ill. 2d 405, 422 (2001). Clear and convincing evidence is said to be something more than a preponderance of the evidence but less than proof beyond a reasonable doubt. *In re D.T.*, 212 Ill. 2d 347, 362 (2004). A trial court's fitness finding will not be reversed unless it is contrary to the manifest weight of the evidence. *In re D.D.*, 196 Ill. 2d at 417. A finding is contrary to the manifest weight of the evidence where the opposite result is clearly evident from the review of the evidence. *Id.*

¶ 15 Section 1(D)(i)(7) of the Adoption Act creates a presumption of depravity as a statutory ground for parental unfitness if a parent has committed aggravated battery to any child. 750 ILCS 50/1(D)(i)(7) (West 2016). Once a presumption of depravity is established, the burden shifts from the State to the parent and requires the parent to show by clear and convincing evidence that the parent is not depraved. *Id.* § 1(D)(i).

¶ 16 On appeal, the State acknowledges that father's conviction for aggravated domestic battery is not one of the grounds listed in section 1(D)(i)(7) of the Adoption Act that would create a presumption of depravity. In spite of the trial court's lengthy and thoughtfully written order addressing a different approach of first impression, we accept the State's concession. Based on the position of the State for purposes of this appeal, we conclude father's conviction for aggravated domestic battery did not establish a presumption of depravity during father's fitness hearing.

¶ 17 Nonetheless, the State can establish that a parent is depraved following a conviction for aggravated domestic battery, even without the benefit of any presumption listed in section 1(D)(i)(7) of the Adoption Act. *In re Adoption of K.B.D.*, 2012 IL App (1st) 121558, ¶ 207. In such situations, absent the statutory presumption, it is more difficult, but not impossible, for the State to prove depravity based on the evidence presented to the court.

¶ 18 Our supreme court has defined depravity as "an inherent deficiency of moral sense and rectitude." (Internal quotation marks omitted.) *In re Abdullah*, 85 Ill. 2d 300, 305 (1981). We may affirm the trial court's fitness determination on any grounds appropriate in the record. *People v. Novak*, 163 Ill. 2d 93, 101 (1994).

¶ 19 Here, the State's exhibit No. 1 served to memorialize father's aggravated domestic battery conviction in which father "knowingly caused great bodily harm to A.F. (F/W DOB 7/9/12), a family member, in that he performed the acts which resulted in fractures to A.F.'s left tibia and right femur." Further, the court took judicial notice of the entire court file in Tazewell County case No. 13-CF-36, which established that A.F. was around six weeks old at the time of the crime and was, in other words, an infant. Frankly, after considering the State's evidence, it would be a struggle to imagine another factual scenario that describes a depraved parent more fittingly. Father's intentional actions caused horrific injuries to A.F. and necessitated father's extended absence from A.F.'s life while father served his prison sentence. Father clearly exhibits an "inherent deficiency of moral sense and rectitude." Therefore, we conclude the certified copy of father's conviction in Tazewell County case No. 13-CF-36, together with the contents of the record subject to the circuit court's judicial review, fulfilled the State's burden of proof and established depravity for purposes of the State's termination petition.

¶ 20 Father argues that his testimony rebutted the State's evidence and established that A.F.'s injuries were the result of an accident. However, the trial court did not find father's version of

events credible. Further, father's guilty plea in Tazewell County case No. 13-CF-36, was based on the factual basis recited to the court indicating that father "knowingly" inflicted the serious injuries to A.F. Father agreed to the factual basis and admitted his guilt by entering a voluntary plea. The agreed facts supporting his guilty plea were in direct contradiction to father's sworn testimony during the hearing on the State's petition to terminate his parental rights. We recognize that the trial court is in a superior position to evaluate father's credibility. We see no reason to disturb the trial court's credibility determinations, and we conclude that father's testimony did little to combat the evidence of depravity presented by the State.

¶ 21    For these reasons, we affirm the trial court's orders finding father unfit based on depravity and terminating father's parental rights.

¶ 22                                    CONCLUSION

¶ 23    The judgment of the circuit court of Tazewell County is affirmed.

¶ 24    Affirmed.