2024 IL App (2d) 230084-U
No. 2-23-0084
Order filed June 25, 2024

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 18-CF-1802 |
| CHRISTOPHER J. TURECEK, | ) ) | Honorable Alice C. Tracy, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE JORGENSEN delivered the judgment of the court.
Justices Hutchinson and Kennedy concurred in the judgment.

**ORDER**

¶ 1    *Held*:  At the hearing on his posttrial claim of ineffectiveness of trial counsel, defendant established that trial counsel was deficient for failing to inform him that he had the ultimate decision whether to offer instructions on lesser included offenses. Defendant did not show prejudice from the failure to instruct the jury on criminal trespass to a residence as a lesser included offense of home invasion. However, he did show prejudice from the failure to instruct the jury on battery as a lesser included offense of aggravated battery. Therefore, we reverse the directed finding in favor of the State on that part of the ineffectiveness claim and remand for further proceedings.

¶ 2    After a jury trial, defendant, Christopher J. Turecek, was convicted of home invasion causing injury (720 ILCS 5/19-6(a)(2) (West 2016)) and aggravated battery by strangulation (*id.*

§ 12-3.05(a)(5)) and sentenced to concurrent prison terms of, respectively, seven and one-half years and three years. Defendant appealed, and we held that the trial court failed to conduct a proper preliminary hearing under *People v. Krankel*, 102 Ill. 2d 181, 189 (1984), on defendant's *pro se* posttrial claim that his trial counsel was ineffective for failing to inform him that he had the personal right to tender instructions on lesser included offenses. *People v. Turecek*, 2021 IL App (2d) 190993-U, ¶¶ 135-38 (*Turecek I*). On remand, the trial court held another preliminary *Krankel* inquiry. After finding that trial counsel had possibly been ineffective, the court moved to a full *Krankel* hearing. At the close of defendant's case, the trial court granted a directed finding for the State on defendant's ineffectiveness claim. On appeal, defendant contends that the trial court erred, and he asks that we reverse his convictions and remand for a new trial. Instead, we affirm in part and reverse in part the trial court's directed finding for the State, and we remand for the court to complete the *Krankel* hearing on one particular component of defendant's ineffectiveness claim.

¶ 3                                    I. BACKGROUND

¶ 4      Our analysis of the issues on appeal presumes knowledge of the facts detailed in *Turecek I*, of which the parties are well aware. We shall refer to those facts only as necessary.

¶ 5                        A. Trial, *Krankel* Hearing, and Prior Appeal

¶ 6      Defendant was charged with home invasion causing injury and aggravated battery by strangulation. The home invasion charge alleged that, on or about September 3, 2018, defendant, not a peace officer acting in the line of duty, knowingly and without authority, entered the dwelling place of another when he knew or had reason to know that another was present, or remained in the dwelling knowing that another was present, and, while inside the dwelling, intentionally caused

injury to Erick Rodriguez. The aggravated battery charge alleged that, on or about September 3, 2018, defendant committed a battery in that he knowingly strangled Rodriguez.

¶ 7        An assistant public defender was appointed to represent defendant. At his jury trial, defendant maintained his innocence of both charges, in part by raising the affirmative defense of self-defense (720 ILCS 5/7-1(a) (West 2016)). Defendant also requested a necessity instruction, but the trial court refused. Defendant did not submit any instructions on lesser included offenses.

¶ 8        Defendant was convicted of both charges. He filed a *pro se* posttrial motion, alleging that his trial counsel was ineffective for, *inter alia*, failing to inform him that he had the personal right to tender instructions on lesser included offenses. Defendant alleged that, had he known of that right, he would have directed trial counsel to offer instructions on (1) criminal trespass to a residence as a lesser included offense of home invasion and (2) simple battery as a lesser included offense of aggravated battery. After a preliminary *Krankel* hearing, the trial court denied the claim. Thereafter, the trial court sentenced defendant to concurrent prison terms of seven and one-half years for home invasion and three years for aggravated battery. On appeal, we held that the trial court made an inadequate preliminary inquiry into defendant's ineffectiveness claim concerning jury instructions on lesser included offenses. *Turecek I*, 2021 IL App (2d) 190993-U, ¶¶ 135-38. We explained that the decision whether to tender an instruction on a lesser included offense ultimately belongs to the defendant. *Id.* ¶ 137. We noted that, at the preliminary *Krankel* hearing, trial counsel confirmed that he and defendant had discussed whether to offer lesser included offense instructions. *Id.* ¶ 136. We held that, in light of defendant's allegation that he wanted trial counsel to offer the instructions, the trial court should have asked counsel whether defendant himself ultimately decided to forgo the instructions. *Id.* ¶ 138. We remanded for the trial court to make a proper preliminary inquiry. *Id.*

¶ 9                              B. *Krankel* Hearing on Remand

¶ 10                         1. Preliminary *Krankel* Hearing

¶ 11    On remand, the trial court held a preliminary *Krankel* hearing on defendant's *pro se* ineffectiveness claim regarding jury instructions on lesser included offenses.

¶ 12    Defendant testified as follows. Before trial, he was in custody for about a year. From his research, he concluded that the jury could be instructed on (1) criminal trespass to a residence (720 ILCS 5/19-4(a)(2) (West 2016)), as a lesser included offense of home invasion and (2) simple battery (*id.* § 12-1(a)) as a lesser included offense of either home invasion or aggravated battery. Between letters, video conferences, and in-person meetings, defendant had about 30 discussions with trial counsel. At least 12 of those discussions involved jury instructions, including lesser included offense instructions. Later in his testimony, defendant estimated that he raised the issue of lesser included offenses 15 times with trial counsel. Each time, trial counsel was "basically dismissive" about offering instructions on lesser included offenses. "[E]arly on," trial counsel claimed that offering such instructions "was not up to him" and that "[he] [could not] do anything about it." Later, during trial, defendant asked trial counsel, "what about lesser included crimes," to which counsel replied, " [']yeah, yeah,['] and got up and walked away."

¶ 13    Trial counsel testified next. Asked if he could recall any discussions with defendant about jury instructions, specifically instructions on lesser included offenses, counsel stated, "I recall *** snippets of one conversation ***." Counsel continued:

"I recall saying this about something in the alternative that if we are professing innocence but we argue in the alternative that that takes away from our professing innocence. So for example a lesser included would be we didn't do this, we didn't do this; but if you find we

did, we did this something else. I recall explaining, *** how that could diminish from our, again, statements that we were innocent of these charges."

¶ 14 Trial counsel further testified:

"Q. Do you have a professional opinion about whether or not the lesser included should be offered?

A. At that time I don't recall having a professional opinion about whether lesser included should be offered. I remember that our strategy seemed to be complete innocence. And that's why I'm remembering that—my discussion of that lesser included would take away from that. That's what I recall from that discussion.

Q. Whose decision is it whether or not to offer a lesser included, yours or your client's?

A. [Defendant].

Q. Do you know if he made that decision in this case?

A. I don't specifically recall. I can speculate that he was of the opinion of he did nothing wrong. And that's the lane we chose is the I'm innocent of everything lane. But definitively I cannot answer that question.

Q. You don't recall ever telling him that it was his decision?

A. I do not recall."

¶ 15 The trial court asked defendant whether he recalled trial counsel ever telling him that it was his personal choice whether to tender instructions on lesser included offenses. Defendant testified, "He did not. I didn't know it was my decision until I studied it afterwards."

¶ 16 The trial court found possible neglect of the case by trial counsel. The court appointed an attorney from the public defender's conflict unit. By counsel, defendant filed an amended motion

for a new trial, realleging that he was deprived of his personal right to request instructions on lesser included offenses. Defendant claimed that he would have requested an instruction on (1) criminal trespass to a residence as a lesser included offense of home invasion and (2) simple battery as a lesser included offense of aggravated battery.

¶ 17    The trial court set the matter for a full *Krankel* hearing.

¶ 18                                2. Full *Krankel* Hearing

¶ 19    Defendant testified as follows. On the day he was arrested, he decided that he would take his case to trial rather than plead guilty to "something [he] didn't do." While in custody awaiting trial, defendant communicated with trial counsel "[d]ozens" of times, primarily by letters and video conferences. Defendant was consistently "trying to get a strategy at all" and "trying to include what [he] wanted to be part of the strategy." However, trial counsel always said, " [']just let me do my job.['] " Before trial, defendant had no clear idea of the defense strategy. When defendant asked trial counsel about particular points of strategy, trial counsel answered, " [']Don't worry about it.['] "

¶ 20    Defendant testified that he and trial counsel discussed jury instructions on lesser included offenses. Defendant "not only wanted it for jury instructions but also to be included into the trial strategy as well." Defendant learned that the jury could be presented with numerous alternatives to convicting him of home invasion and aggravated battery. He believed that, by "looking for battery or some version of criminal trespass," the defense could "mak[e] sure that even if it was worst-case scenario, it could have been a low class [felony] or a misdemeanor." Defendant continued:

> "Q. And how did [trial counsel] respond when you expressed your intention for
>
> these instructions?

A. He said that it wasn't an option and that I couldn't actually do that.

Q. Prior—anytime prior to trial had [trial counsel] agreed to offer those instructions?

A. I mentioned it so many times, he just simply said, [']all right, fine, I will look into it but it's not really an option.[']

Q. And what was your understanding of whose ultimate decision it was whether to offer those instructions?

A. Before the trial I didn't realize that it was my choice and my choice only. ***."

¶ 21 Defendant testified that, at trial, cocounsel sat between trial counsel and defendant. Defendant wrote down questions for trial counsel, but cocounsel did not pass them on or even look at them. Twice during trial, defendant "wrote in huge letters [']lesser included.' " Cocounsel "shoved it back to [defendant] and just shook her head." Just before the instructions conference, defendant told trial counsel that he wanted to offer instructions on lesser included offenses. Trial counsel responded that the instructions "[would not] work with what [he] ha[d] been doing" and that defendant should "just let [him] do [his] job." Defendant did not subsequently tell either counsel that he no longer wanted to offer such instructions.

¶ 22 Defendant testified on cross-examination as follows. Early in the case, he decided not to plead guilty to something that he did not do. He said so to trial counsel. Although defendant's insistence on his innocence was part of the defense strategy, "[Kane] [C]ounty ha[d] such an amazingly-high conviction rate that [defendant] wanted to make sure [trial counsel] hedged the bets." Asked whether he and trial counsel discussed "an all-or-nothing type of trial strategy," defendant responded that he wanted to ensure, "knowing that the conviction record [was] through the roof [in Kane County], that the worst-case scenario *** was better than—at least an option to

be better than the Class X [home invasion]." Defendant did want trial counsel to argue that he was innocent of all charges. To that end, defendant wanted instructions on self-defense and necessity, and trial counsel offered them. However, during the conversation in which trial counsel agreed to offer those instructions, defendant asked, " ['][C]ould we include the lesser included?['] " and trial counsel responded, " ['][N]o, we are not doing that.['] "

¶ 23    Asked what he said to trial counsel during the trial "to make it clear to him that [defendant] wanted the lesser included offered," defendant testified:

> "Okay. So numerous letters talking about lesser included. Even in the letters I believe I even mentioned that this should be part of trial strategy as well as options for the jurors themselves.
>
> And then during trial I wrote it down, like the whole piece of legal paper, 'lesser included,' two different times as well as bringing it up again [at] the meeting before the jury instructions."

¶ 24    Defendant testified that, at this "meeting before the jury instructions," which occurred just before the instructions conference, he asked trial counsel, " ['][W]ell, what about lesser included? Are we allowed to do this? Can we make sure that that gets put in?['] " Trial counsel responded, " ['][N]o, we are going with those two instructions['] " on self-defense and necessity. Asked "So you did tell [trial counsel], 'I want those instructions'?", defendant testified, "Yes." At that point, defendant did not yet know that he had the personal right to offer the instructions.

¶ 25    Defendant recalled that he told trial counsel 12 to 15 times that he wanted instructions on lesser included offenses. The first time was about two weeks after his arrest. At that time, trial counsel told defendant, " ['][W]e are not going to be able to get the initial charges dropped to the lesser included at the moment.['] " Defendant continued:

"Q. Every time that you spoke to [trial counsel] about the lesser-included jury instructions, did you tell him: [']I want you to offer lesser-included jury instructions?[']

A. It was more: [']Can we use these? What is this for? I see that this has been a consistent thing through case law. Why can't we use these? Why can't we—why can't we do that?[']

And it was the consistent [*sic*]: [']Absolutely not. This is not what my plan is. I am not doing that.[']

* * *

Q. *** When you were speaking with [trial counsel], were you simply just asking him [']can we offer lesser included['] or did you ever tell him [']I want lesser included?[']

A. Yes to both."

¶ 26    Defendant acknowledged that, in his *pro se* posttrial motion, he wrote that, "as planned before the trial, the defense failed to *attempt* to offer lesser-included offenses as options to the jury." (Emphasis in original.) He explained, "It was my plan *** to include lesser included." However, he conceded that the motion did not reference *his* plan but "the defense" plan.

¶ 27    Defendant also acknowledged that, at the preliminary *Krankel* hearing on remand, he testified that trial counsel said that offering instructions on lesser included offenses "was not up to him." Trial counsel made this statement "[e]arly on," but defendant "didn't know what he meant by that and *** didn't know until after[ward] that it was up to [defendant] to make that decision."

¶ 28    The State introduced several letters that defendant wrote to trial counsel before trial. Defendant could not recall the dates or the sequence of the letters. In the first letter (People's exhibit No. 5), defendant asked, "Can we make a Class 4 'Criminal Trespassing' an option for the jury to convict with? (Home invasion OR Crim[inal] Trespass?)" and "Can we have an option for

the battery be [*sic*] the Class 3 or the misdemeanor? I didn't choke the moron." Defendant acknowledged that the letter did not "directly" state that he wanted instructions on lesser included offenses.

¶ 29 In the second letter (People's exhibit No. 6), defendant cited authority that aggravated battery is a lesser included offense of home invasion. He then wrote: "We did come to the conclusion together that, depending on how the trial goes, we can make an easy argument to tender instructions to the jury to choose H[ome] Inv[asion], Battery OR Criminal Trespass."

¶ 30 In the third letter (People's exhibit No. 7), defendant wrote, "Are we still going for the lesser included offense strategy that the Class 3 battery is included in the H[ome] Invas[ion][?]" and "Is the Class 4 [C]riminal Trespass an option for a guilty verdict for the jury if the trial doesn't go well?"

¶ 31 After being shown the letters, defendant testified:

"Q. So *** you did discuss with [trial counsel] to wait until how the trial goes as to whether the instructions should be given?

A. Yes. That's what he told me, that if he was even remotely going to use it, that was only if the trial wasn't going well. That was the best I had gotten out of a lesser included.

Q. So that was a conclusion that you came up with [*sic*] him; correct?

A. That was as good as I could get him to accept a lesser included [*sic*]."

¶ 32 Defendant agreed that he testified at trial as follows. The first time he went to Rodriguez's house, Kyra Trynoski opened the door and he entered, although "no one invited [him] in[.]" He left. When he returned, Trynoski again opened the door, and he entered. On this occasion, he punched Rodriguez. Defendant later told the police that it was " ['][his] fault['] " and that " ['][he]

shouldn't have gone back there.['] " He also said, " [']I don't blame them; I was screaming at them an hour and a half before.['] "

¶ 33 On redirect, defendant testified that he did not fully understand trial counsel's strategy. The instructions on lesser included offenses were "something that [defendant] wanted to be part of the actual strategy."

¶ 34 Defendant testified that trial counsel told him that it " [']was not [his] decision['] " whether to include the instructions on lesser included offenses. Defendant took this statement to mean that "it was either his supervisor or the judge." Asked whether trial counsel "ma[de] it clear to [him] whether or not it was [defendant's] decision," defendant testified, "Not once."

¶ 35 Defendant rested.

¶ 36                     3. State's Motion for a Directed Finding

¶ 37 The State moved for a directed finding, arguing as follows. To prevail on his ineffectiveness claim, defendant had to show both that trial counsel's performance was deficient and that defendant was prejudiced thereby. See *Strickland v. Washington*, 466 U.S. 668, 687 (1984). On *Strickland*'s performance prong, the State argued that, although defendant testified that trial counsel dismissed his queries about lesser included offenses, People's exhibit No. 6 proved that, before the instructions conference, defendant and trial counsel had "come to the conclusion together" that they would see how the trial progressed before deciding whether to offer instructions on lesser included offenses. Ultimately, the State suggested, defendant "didn't ask or tell [trial counsel] to offer the lesser included. That's clear from his letters *** to [trial counsel]." Indeed, it could be assumed that defendant, after "due consultation" with trial counsel, decided himself not to tender instructions on lesser included offenses. Thus, counsel's performance was

not substandard; rather, he reasonably acceded to defendant's wish that they see how the trial progressed before deciding whether to offer the instructions.

¶ 38    On *Strickland*'s prejudice prong, the State noted that the right to offer an instruction on a lesser included offense does not imply the right to have the trial court issue it; rather, a defendant is entitled to such an instruction only if a rational jury could find the defendant guilty of the lesser offense yet acquit him of the greater offense (see *People v. Novak*, 163 Ill. 2d 93, 108 (1994)). The State argued that, although criminal trespass to a residence is a lesser included offense of home invasion (*People v. Gwinn*, 366 Ill. App. 3d 501, 519 (2006)), a rational jury in this case could not find defendant guilty of criminal trespass to a residence yet acquit him of home invasion. The State explained that criminal trespass to a residence included all elements of home invasion as charged except the element of intentional injury. Compare 720 ILCS 5/19-6(a)(2) (West 2016) (home invasion causing injury), with *id.* § 19-4(a)(2), (b)(2) (Class 4 felony version of criminal trespass to a residence). The State noted that the evidence on the common element of unauthorized entry was compelling. Except for defendant, all the pertinent witnesses testified that defendant broke into Rodriguez's house, and the evidence of damage to the side door corroborated their accounts. As for the element of intentional injury, defendant admitted that he punched Rodriquez. Although defendant claimed that he did so because he was being restrained, defendant's trespass to Rodriguez's home justified Rodriguez in restraining defendant to terminate his unlawful presence in the home. And, as defendant initially provoked the use of force against himself, he was justified in using force against Rodriguez only if (1) he reasonably believed that he was in imminent danger of death or great bodily harm *and* (2) he had exhausted other reasonable means of avoiding death or great bodily harm (see *id.* § 7-4(c)(1))—none of which a rational jury could find. The State concluded that a rational jury could not convict defendant solely of either criminal

trespass to a residence or some form of battery, and the combined elements of those offenses constituted home invasion.

¶ 39 Defendant responded, on the performance prong, that his testimony proved that he was "clear all along" to trial counsel that he wanted to offer instructions on lesser included offenses but counsel dismissed those entreaties. According to defendant, his concurrence in the wait-and-see approach referenced in People's exhibit No. 6 was merely an attempt to maintain a rapport with trial counsel. If there were any doubt about defendant's attitude toward trial counsel's failure to request instructions on lesser included offenses, defendant's *pro se* posttrial "put everyone on notice that that was not his decision and, in fact, his decision was to offer the instructions" but trial counsel "ignored every attempt that he made" to do so.

¶ 40 On the prejudice prong, defendant disputed the State's conclusion that the evidence would compel a rational jury to find him guilty of both criminal trespass to a residence and battery, which together constituted home invasion. For instance, defendant could have been found guilty of battery but not criminal trespass to a residence. As evidence of an authorized entry, he pointed to his own testimony that, when he returned to Rodriguez's house, Trynoski opened the door and no one in the house told him not to enter. Alternatively, defendant could have been found guilty of criminal trespass to a residence but not battery, based on self-defense. Defendant admitted that he struck Rodriguez, but a rational jury could find that he reasonably believed that Rodriguez was carrying a crowbar (which in fact was a crossbow), which could inflict great bodily harm or death.

¶ 41 In rebuttal, the State reasserted that a rational jury would have found defendant guilty of both criminal trespass to a residence and battery—*i.e.*, home invasion—because defendant's self-defense theory was not viable even under his version of the events. The State explained that the law required not only that defendant reasonably believe that he was in imminent danger of death

or great bodily harm but had also that he had exhausted every other reasonable means of escaping the danger. These means included leaving the house, which defendant did not do. In any event, defendant's testimony did not support an inference that he was in imminent danger of death or great bodily harm: he never testified that Rodriguez raised the apparent crowbar, and he testified that he was restrained from behind as he was *walking toward* Rodriguez.

¶ 42                          4. Directed Finding Granted

¶ 43    The trial court granted the State's motion, reasoning as follows. People's exhibit No. 6 and defendant's testimony at the hearing proved that he and trial counsel discussed jury instructions and that counsel accepted defendant's request to offer one on necessity. The court concluded: "So either we know it's not of record [*sic*] that [trial counsel] specifically asked [defendant] or told him that was his choice on the lessers."

¶ 44    Next, the trial court noted that, although it was defendant's personal choice whether to offer instructions on lesser included offenses, he had no right to them unless a rational jury could convict him of the lesser offense but acquit him of the greater offense. The court determined that, if the jury convicted defendant of criminal trespass, it could not rationally acquit him of home invasion, because the element of intentional injury was clearly satisfied based on the harm defendant caused Rodriguez. The court further found that there was no reasonable argument that defendant was in imminent danger of death or great bodily harm when he made physical contact with Rodriguez or that he resorted to all reasonable means of escape before making contact.

¶ 45    The trial court also noted that defendant was the only witness to testify that he made his second entry by coming in peaceably through the front door. The remaining witnesses testified that they locked the doors and turned off the lights, but that defendant forced his way in through the locked side door. The photographs of damage to the side door corroborated their accounts.

Defendant had also told the police that he knew he should not have returned to the house and he understood why the residents might be afraid of him.

¶ 46    The trial court concluded:

"The Court finds that the defendant was inconsistent in his testimony regarding what he did and did not talk to [*sic*] regarding jury instructions with [trial counsel]. He said [trial counsel] was dismissive. Then he talked about the conversation regarding the necessity defense where [trial counsel] must have listened because the jury instruction was tendered to the Court.

There was discussion in that aspect. So the Court finds that [trial counsel's] performance was not objectively unreasonable; however, even if it was[,] there's not a reasonable probability that[,] but for counsel's unprofessional errors[,] the results of the proceeding would have been different based on what I just stated on the record. ***."

¶ 47    Defendant timely appealed.

¶ 48                                II. ANALYSIS

¶ 49    On appeal, defendant contends that the trial court erred in denying him a new trial, because he established that trial counsel was ineffective for failing to inform him that it was his personal right to decide whether to offer jury instructions on lesser included offenses. Defendant argues that the evidence proved that (1) he wanted these instructions submitted; (2) the trial court would have been obligated to issue the instructions, based on the evidence; and (3) the instructions would have changed the outcome at trial.

¶ 50                            A. Standard of Review

¶ 51    The trial court granted the State's motion for a directed finding at the close of defendant's evidence in a full *Krankel* evidentiary hearing. The State's motion was the equivalent of a motion

in a non-jury civil case to find for the defendant at the close of the plaintiff's evidence. See 735 ILCS 5/2-1110 (West 2020). In ruling on this type of motion, the trial court must weigh the evidence, considering the witnesses' credibility and the evidence's weight and quality. *Id.* On appeal, we may not disturb the trial court's decision unless it is against the manifest weight of the evidence. *People ex rel. Sherman v. Cryns*, 203 Ill. 2d 264, 276 (2003).[1]

¶ 52                                    B. *Strickland* and Lesser Included Offenses

¶ 53    To establish ineffective assistance of counsel, a defendant must prove that (1) counsel's representation was unreasonable and (2) it is reasonably probable that, but for counsel's

---

[1]The parties cite *People v. Jackson*, 2020 IL 124112, ¶ 98, for the proposition that we may disturb the trial court's ruling after a *Krankel* evidentiary hearing only if it is manifestly erroneous. We choose to cite the authority most applicable to the procedural context, *i.e.*, a judgment for the party that does not have the burden of proof, based on the insufficiency of the other party's evidence. In any event, there is no practical difference here between the *Jackson* and *Cryns* standards of review.

Also, we note that *Cryns* sets out a two-stage procedure in which the trial court initially decides whether the nonmoving party has made a *prima facie* case and, if so, then weighs the evidence and decides whether the *prima facie* case has been negated. See *People ex rel. Sherman v. Cryns*, 203 Ill. 2d 264, 276 (2003). While the trial court did not expressly acknowledge this process, we presume that the court completed both steps, in accordance with the law. See *People v. Miller*, 2021 IL App (2d) 190093, ¶ 22 ("[T]he trial court is presumed to know the law and to follow it unless the record affirmatively indicates the contrary."). The court's explanation of its ruling appears to support this presumption.

unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 687, 694; *People v. Albanese*, 104 Ill. 2d 504, 525 (1984).

¶ 54    Section 2-9(a) of the Criminal Code of 2012 (720 ILCS 5/2-9(a) (West 2016)) defines a lesser included offense as one that "[i]s established by proof of the same or less than all of the facts or a less culpable mental state (or both), than that which is required to establish the commission of the offense charged[.]"  There are multiple approaches for determining whether an offense is a lesser included offense of another.  *People v. Kennebrew*, 2013 IL 113998, ¶ 28.  In this context, we follow the "charging instrument" approach, under which "the facts alleged in the charging instrument must contain a 'broad foundation' or 'main outline' of the lesser offense.  [Citations.]" *Id.* ¶ 30.

¶ 55    The parties agree that (1) criminal trespass to a residence is a lesser included offense of home invasion as charged and (2) battery is a lesser included offense of aggravated battery as charged.  We also agree.

¶ 56    A person commits home invasion as charged when he (1) without authority knowingly enters the dwelling place of another when he knows or has reason to know that one or more persons are present, or knowingly enters the dwelling of another and remains until he knows or has reason to know that one or more persons are present, and (2) intentionally causes injury to a person within the dwelling place.  720 ILCS 5/19-6(a)(2) (West 2016).  There is more than one variant of criminal trespass to a residence (see *id.* § 19-4).  The closest analog to home invasion as charged is the Class 4 felony version of criminal trespass, which a person commits when, without authority, he knowingly enters the residence of another and knows or has reason to know that one or more persons are present or he knowingly enters the residence of another and remains within after he knows or has reason to know that one or more persons are present. *Id.* § 19-4(a)(2), (b)(2).  Thus,

this version of criminal trespass has all the elements of home invasion as charged except the element of intentional injury.

¶ 57    We also note that home invasion as charged is a combination of criminal trespass to a residence and battery.  See § 12-3(a) ("A person commits battery if he or she knowingly without legal justification by any means (1) causes bodily harm to an individual or (2) makes physical contact of an insulting or provoking nature with an individual.").

¶ 58    Further, simple battery is a lesser included offense of aggravated battery as charged, as the latter required the State to prove that (1) defendant committed a battery against Rodriguez and (2) defendant knowingly strangled Rodriguez while committing the battery.  See *id.* § 12-3.05(a)(5).

¶ 59    The decision whether to offer an instruction on a lesser included offense belongs ultimately to the defendant, not counsel.  *People v. Medina*, 221 Ill. 2d 394, 403-04 (2006) (citing *People v. Brocksmith*, 162 Ill. 2d 224, 229 (1994)).  "A defendant is entitled to a lesser included offense instruction only if the evidence would permit a jury rationally to find the defendant guilty of the lesser included offense and acquit him or her of the greater offense."  *Novak*, 163 Ill. 2d at 108.

> "A lesser included offense instruction is proper only where the charged greater offense requires the jury to find a disputed factual element that is not required for conviction of the lesser included offense.  [Citations.]
>
>    This evidentiary requirement is usually satisfied by the presentation of conflicting testimony on the element that distinguishes the greater offense from the lesser offense.  However, where the testimony is not conflicting, this requirement may be satisfied if the conclusion as to the lesser offense may fairly be inferred from the evidence presented.  [Citation.]  The amount of evidence necessary to meet this factual requirement, *i.e.*, that

tends to prove the lesser offense rather than the greater, has been described as 'any,' 'some,' 'slight,' or 'very slight.' [Citations.]" *Id.* at 108-09.

¶ 60    Defendant contends that trial counsel's performance was unreasonable because he failed to inform defendant that he had the personal choice whether to proffer instructions on lesser included offenses, specifically, criminal trespass to a residence and simple battery.  He contends that this failure prejudiced him because, had he known that it was his prerogative to proffer the instructions, he would have done so; had he proffered the instructions, the trial court would have been obligated to give them, per the "slight evidence" standard; and had the jury been instructed as defendant wished, it is reasonably probable that the result of the trial would have been different. We consider these contentions in turn.

¶ 61                            C. Trial Counsel's Performance

¶ 62    We apply first *Strickland*'s performance prong.  We hold that (1) the trial court's finding that trial counsel properly informed defendant that he had the personal prerogative to request lesser included offense instructions was against the manifest weight of the evidence and (2) trial counsel's failure was objectively unreasonable.

¶ 63    On (1), the evidence was essentially undisputed.  At the preliminary *Krankel* hearing on remand, trial counsel was asked if he ever told defendant that it was defendant's decision whether to offer the instructions.  Trial counsel replied that he did not recall so informing defendant. Defendant, when asked whether trial counsel ever provided this information, answered: "He did not.  I didn't know it was my decision until I studied it afterwards."  At the full *Krankel* hearing, defendant testified that he repeatedly asked trial counsel about the instructions but that counsel told him that " ['it wasn't an option['] and that [defendant] ['couldn't actually do that['] "— statements that were manifestly untrue under *Medina* and *Brocksmith*.  Defendant also testified he

did not realize before trial that it was "[his] choice and [his] choice only" to request the instructions. More directly, defendant testified that "[n]ot once" "[d]id [trial counsel] make it clear to [defendant] whether or not it was [his] decision." The only evidence cutting the other way was trial counsel's ambiguous statement to defendant that it " [']was not up to['] " trial counsel to request the instructions. Defendant, however, testified that he did not interpret this open-ended remark to mean that the decision was up to *defendant*.

¶ 64    On (2), we hold that trial counsel's failure to inform defendant of this basic and well-established right was objectively unreasonable. There was simply no justification for this lapse. Trial counsel's omission is especially remarkable given how persistently defendant raised the possibility of offering instructions on lesser included offenses. Many of these comments to trial counsel implied that defendant wanted the instructions or at least was seriously considering the option.

¶ 65    Although there is no opinion directly on point, several appellate court decisions support our holding of deficient performance. In *People v. Barkes*, 399 Ill. App. 3d 980, 988, 992 (2010), we reversed the second-stage dismissal of the defendant's postconviction petition, holding that he made a substantial showing that his trial counsel was ineffective. One basis for our holding was that, when the defendant told trial counsel that he wanted a bench trial, counsel refused to request one, telling the defendant that "counsel 'was running the show and [the defendant] was getting a jury trial.' " *Id.* at 982. Trial counsel's performance was deficient under *Strickland* because counsel ignored the basic principle that it is a defendant's prerogative to choose between a jury trial and a bench trial. *Id.* at 988. (We also held that the defendant had shown prejudice by alleging sufficiently that, given the choice, he would have opted for a bench trial. *Id.*)

¶ 66    We cited *Barkes* in *People v. Rivera*, 2014 IL App (2d) 120884, ¶¶ 4, 9, where the defendant appealed the second-stage dismissal of his postconviction claim that trial counsel was ineffective because he told the defendant that he had decided not to submit a lesser included offense instruction and did not defer to or consult the defendant on the matter. We noted that the defendant was correct that the decision was ultimately his (*id.* ¶ 10), and we cited *Barkes* approvingly (*id.* ¶ 11). We ultimately distinguished *Barkes*, based not on *Strickland*'s performance prong but on its prejudice prong. Specifically, we held that the defendant had not sufficiently alleged that he would have submitted the instruction in question if he had been given the choice. *Id.* ¶¶ 12-13. Implicit in our decision was that trial counsel's failure to inform the defendant of his prerogative to submit the instruction at issue was deficient performance. *Id.* ¶¶ 9-12.

¶ 67    Although *Barkes* involved an affirmative misrepresentation of whose decision it was to assert the right in question, *Rivera* was more of a failure by trial counsel to disclose whose decision it was. Thus, regardless of whether trial counsel here affirmatively misled defendant or simply failed to inform him, counsel performed unreasonably. Therefore, the directed finding for the State cannot be affirmed based on *Strickland*'s performance prong.

¶ 68                                    D. Prejudice

¶ 69    We turn to whether we may affirm on the basis that defendant did not satisfy *Strickland*'s prejudice prong.

¶ 70                    1. Whether Defendant Would Have Offered the Instructions

¶ 71    We hold first that defendant established a reasonable probability that he would have offered lesser included offense instructions had he known it was his personal right to do so. In rejecting this proposition, the trial court relied on People's exhibit No. 6, in which defendant recounted that he and trial counsel had decided that they would offer the instructions only "depending on how the

trial [went]." Defendant testified that the context for this statement was trial counsel's remark that "if he was even remotely going to use [the instructions], that was only if the trial wasn't going well." About this remark, defendant commented: "*That was the best I had gotten out of a lesser included [sic].*" (Emphasis added.) Further, defendant testified, "*That was as good as I could get him to accept ***.*" (Emphasis added.) This testimony implies that defendant "agreed" to the wait-and-see strategy only because he believed that *trial counsel* ultimately had the call and that the most to which *counsel* would agree was to offer the instructions depending on how the trial unfolded. Of course, this proves nothing about what defendant would have done had he known that *he* controlled the decision. Defendant made his "choice" of strategy under the assumption that it was not really his choice and that he had to settle for whatever trial counsel would concede to him.

¶ 72    There was ample evidence of how defendant would have chosen if he had known the decision was his alone. Defendant testified that he brought up the instructions issue shortly after his arrest; that, whenever he talked to trial counsel about instructions on lesser included offenses, he told counsel that he wanted the instructions to be offered; that he wrote numerous letters telling counsel that he wanted lesser included offenses to be part of the trial strategy; and that, just before the instructions conference, he told counsel explicitly that he wanted the instructions. Defendant also testified that he decided at some point that, given Kane County's high conviction rate (as he perceived it), he wanted to hedge his bets.

¶ 73    There was also abundant evidence implying that defendant truly wanted the instructions given and, thus, would have requested them had he known he controlled that decision. During the discussion in which trial counsel agreed to offer instructions on self-defense and necessity, defendant asked him whether they "could *** include the lesser included." (Counsel said no.) In

People's exhibit No. 5, defendant asked trial counsel whether they could give the jury the options of (1) convicting him of criminal trespass as a lesser included offense of home invasion and (2) convicting him of simple battery as a lesser included offense of aggravated battery. As to the latter, defendant specified that he did not commit the act of strangulation that was the basis of the aggravated battery change. During the trial, defendant twice wrote " [']lesser included' " on a sheet of paper and tried to get trial counsel and cocounsel to read it. In none of these queries or overtures did defendant *explicitly* tell trial counsel that he wanted the instructions offered. *But* these repeated messages did *implicitly* show as much. Had defendant not wanted the instructions on lesser included offenses, he would not have repeatedly inquired whether they could be offered and given.

¶ 74    We conclude that, as to prejudice, defendant showed a reasonable probability that, had trial counsel performed reasonably by informing defendant of his prerogative, he would have chosen to offer the instructions on lesser included offenses.

¶ 75            2. Whether the Trial Court Would Have Given the Instructions/

            Whether the Instructions Would Have Changed the Trial's Outcome

¶ 76    We turn to the second part of the prejudice inquiry: whether defendant established a reasonable probability that the trial court would have given the instructions and, if so, whether the result of the trial would have been different. We undertake this inquiry separately for each lesser included offense: criminal trespass to a residence and simple battery.

¶ 77                    a. Criminal Trespass to a Residence

¶ 78    We consider first criminal trespass to a residence as a lesser included offense of home invasion as charged. We hold that, even if the evidence on the battery of Rodriguez (the element of home invasion as charged that was not included in criminal trespass, see *supra* ¶ 56) met the

low threshold for giving an instruction on criminal trespass, the evidence in its totality did not meet the *Strickland* threshold for a different result.

¶ 79    We note first that there was overwhelming evidence on the first element of home invasion as charged (see 720 ILCS 5/19-6(a)(2) (West 2016)), which itself comprises the entire offense of criminal trespass to a residence (Class 4 felony version) (see *id.* § 19-4(a)(2), (b)(2)).

¶ 80    Defendant had gone to Rodriguez's home previously that evening, encountered Rodriguez and Trynoski inside, and left.  When he returned, he saw Trynoski's car in the driveway and observed her through a window.  Thus, defendant knew that the dwelling was occupied.

¶ 81    Further, while defendant's testimony itself provided some evidence of authorized entry, the totality of the evidence conclusively proved that defendant's entry was not authorized. Rodriguez and his brother, Scott, testified that, after defendant left the house after his first visit, they locked all the doors and turned off all the lights.  Later, defendant and his associate gained entry by pounding on the side door and forcing it open despite Rodriguez's resistance.  Trynoski testified that, immediately before defendant's second entry, she heard banging by the side door and voices calling for her, followed by the sound of the side door opening and crashing against the cabinet behind it and the voices of Rodriguez and Scott yelling at people outside not to enter. The accounts given by Rodriguez, Scott, and Trynoski were corroborated by the photographs showing that the side door was severely damaged between defendant's first and second visits. In a phone conversation with Trynoski, defendant essentially admitted that he broke in the side door.  In any event, the jury was instructed that defendant could be held guilty for another's unlawful entry; thus, he was, at the least, guilty based on his associate's entry by breaking in the side door.

¶ 82    Moreover, even disregarding the compelling evidence of the nonconsensual entry through the side door, the circumstances of defendant's return were inconsistent with a consensual entry.

Defendant had recently visited the house, and, under any rational view of the evidence of that encounter, it was plain that Rodriguez did not want him there. Also, Trynoski testified that, on defendant's first visit, she tried to keep him out of the house, but he entered as she was closing the door. And, defendant testified that, upon his return, the doors were locked and the lights were turned off. When he entered, he saw Rodriguez advancing on him and carrying what appeared to be a crowbar (but was actually a crossbow). Finally, defendant admitted to the police that he knew that he should not have returned to Rodriguez's house and that the occupants had reason to fear him. Thus, when he left after his first visit, defendant was on notice that he was not wanted back any time soon, however and wherever he made his entrance.

¶ 83   Thus, we conclude that the evidence of criminal trespass to a residence—and, hence, of the first element of home invasion as charged—was overwhelming. Equally compelling was the evidence on the second element of home invasion as charged: intentional injury to an occupant. This required only a battery. Defendant admitted to grabbing or punching Rodriguez, and there was ample evidence that he caused Rodriguez numerous injuries. The only hope of an acquittal on home invasion would have turned on self-defense. However, defendant presented a self-defense theory at trial and it was rejected—with no surprise, as it was exceedingly weak.

¶ 84   "A person is justified in the use of force against another when and to the extent that he reasonably believes that such conduct is necessary to defend himself or another against the other's imminent use of unlawful force." *Id.* § 7-1(a). The jury was duly instructed that Rodriguez and Scott were justified in using force to the extent that they reasonably believed necessary to prevent the unlawful entry by defendant and his associate into the home. Thus, defendant had a severely limited legal basis to argue that he justifiably defended himself or Trynoski against the imminent use of unlawful force. At trial, defendant, who alone testified that he did not initiate the altercation

that took place on his return, could testify only that he feared that Rodriguez would harm him or Trynoski by using the object he believed was a crowbar (but was in fact a crossbow). But he admitted that he never saw Rodriguez raise the object.

¶ 85    Further, even self-defense as outlined above could not justify defendant's battery of Rodriguez if defendant initially provoked the use of force against himself, unless (1) that force was so great that he reasonably believed that he was in danger of death or great bodily harm and (2) he had exhausted every other reasonable means of escaping the danger. See *id.* § 7-4(c)(1). Except in the version he alone gave, defendant initially provoked the use of force against himself. Moreover, that force used against defendant, *i.e.*, punches resulting in minor injuries to his face, did not support a reasonable belief that he was in danger of death or great bodily harm. During the entire encounter, defendant's only documented injuries were a small laceration and bump under his right eye. These injuries did not amount to great bodily harm. See *In re T.G.*, 285 Ill. App. 3d 838, 846 (1996) (three minor stab wounds causing minimal pain and bleeding did not constitute great bodily harm beyond a reasonable doubt); *People v. Watkins*, 243 Ill. App. 3d 271, 278 (1993) (gunshot that grazed victim's side without any further damage was inadequate to prove great bodily harm beyond a reasonable doubt).

¶ 86    Finally, even if it were arguable that great bodily harm was threatened, the evidence was overwhelming that defendant did not exhaust every other reasonable means of escaping the danger—*e.g.*, simply walking out the door (and possibly calling the police). Thus, defendant has not shown a reasonable probability that a rational jury would not have convicted him of home invasion as charged if the instruction on criminal trespass to a residence had been given.

¶ 87    Defendant cites authority that, where a defendant satisfies the "slight evidence" threshold for obtaining an instruction on a lesser included offense, but the trial court refuses to give the

instruction, reversal is compelled unless the State can show that the error was harmless beyond a reasonable doubt. See *People v. Blan*, 392 Ill. App. 3d 453, 459-60 (2009). In *Blan*, however, the defendant actually offered a lesser included offense instruction and the trial court refused to give it. *Id.* at 456, 459-60. *Blan* did not involve a claim of ineffective assistance based on counsel's failure to proffer the instructions or to inform the defendant that he could do so on his own initiative. Thus, *Blan* did not implicate the *Strickland* two-pronged test for ineffective assistance of counsel, including its "reasonable probability" prejudice test.

¶ 88                                        b. Battery

¶ 89     We now turn to whether defendant was prejudiced by the absence of an instruction on simple battery as a lesser included offense of aggravated battery as charged. The aggravated battery charge alleged that defendant strangled Rodriguez. The difference between the charged offense of aggravated battery and the lesser included offense of simple battery was strangulation. Compare 720 ILCS 5/12-3.05(a)(5) (West 2016), with *id.* § 12-1(a). Rodriguez testified that defendant strangled him during defendant's second visit to the house; defendant testified that he did not. Thus, defendant clearly met the "slight evidence" test to entitle him to an instruction on simple battery. See *Novak*, 163 Ill. 2d at 108-09. We also hold that defendant demonstrated a reasonable probability that a rational jury would find him guilty of simple battery yet acquit him of aggravated battery as charged.

¶ 90     Rodriguez testified that defendant "strangled" or "choked" him on both the first and second visits. Scott testified that, during the second visit, he saw Rodriguez being choked, but Scott did not (and likely could not) testify as to whether Rodriguez's breathing was impaired. Defendant denied that he strangled Rodriguez on either visit. There was no testimony that defendant's associate strangled Rodriguez. Photographs showed that Rodriguez suffered considerable injuries,

but none of them clearly proved strangulation. Moreover, Rodriguez admitted that he did not report anything about the first incident in his written statement to the police (what he wrote about the second incident is unclear from his testimony). The parties stipulated that, in talking to a prosecutor, Rodriguez did not use the word "strangled" in connection with defendant's first visit to the house and "was not asked about nor *** volunteer[ed] the fact that he had lost consciousness or was about to lose consciousness."

¶ 91　　Given the paucity of corroborating evidence on either side, we conclude that the directed finding for the State on the ineffectiveness claim as it related to an instruction on simple battery cannot be affirmed on the basis that defendant did not satisfy *Strickland*'s prejudice standard. In short, the trial court erred in granting the State a directed finding on defendant's *Krankel* claim insofar as the instruction on simple battery was concerned. Defendant is entitled to further proceedings under *Krankel* on this issue.

¶ 92　　To summarize, we affirm the judgment as to the claim that trial counsel was ineffective for failing to inform defendant that he had the personal right to offer an instruction on criminal trespass to a residence as a lesser included offense of home invasion as charged. We reverse the judgment as to the claim that trial counsel was ineffective for failing to inform defendant that he had the personal right to offer an instruction on simple battery as a lesser included offense of aggravated battery as charged. We remand the cause for completion of the *Krankel* hearing, in which the State shall present its evidence on defendant's ineffectiveness claim relating to the forgone battery instruction; defendant may present his rebuttal evidence if he so chooses; and the trial court shall enter a complete judgment in accordance with this order.

¶ 93　　　　　　　　　　　　　　　III. CONCLUSION

¶ 94     For the reasons stated, we affirm in part and reverse in part the judgment of the circuit court

of Kane County and we remand the cause for further proceedings consistent with this order.

¶ 95     Affirmed in part and reversed in part.

¶ 96     Cause remanded with directions.